[L. A. No. 2721.   Department Two.—September 23, 1912.]

## S. STERN, Respondent, v. W. B. JUDSON, Appellant.

SUMMONS—SERVICE BY PUBLICATION—INABILITY TO FIND DEFENDANT WITHIN THE STATE—AFFIDAVIT MUST SHOW DUE DILIGENCE.—The law permits, under some circumstances, a plaintiff to procure an order for the publication of summons where the defendant in the action, after the exercise of due diligence on the part of the plain-tiff, cannot be found within the state, and the fact is so made to appear by affidavit by or on behalf of the plaintiff. Such an affidavit is always *ex parte,* and the court, when it is sufficient in form, must accept and act upon it and grant the order.

ID.—DUE DILIGENCE ESSENTIAL TO VALIDITY OF SERVICE AND JUDGMENT. In proceeding to avail himself of this statutory mode for constructive service of summons, a plaintiff must, in fact, have exercised due diligence. A mere formal compliance with the provisions of the statute, or a statement to that effect in his affidavit, will not suffice; nor will an order for publication based upon such an affidavit, or a judgment following a service by publication thereon, be conclusive of the fact that such diligence was exercised..

ID.—DIRECT ATTACK ON JUDGMENT—WANT OF DUE DILIGENCE MAY BE SHOWN.—The question of due diligence is open, as between the parties, under a direct attack on the ground of fraud on the part of the plaintiff in procuring the judgment.

ID.—JUDGMENT OBTAINED BY FRAUD—FALSE STATEMENTS IN AFFIDAVIT OF DUE DILIGENCE.—When a false affidavit is presented to the court for the purpose of obtaining an order for the service of summons by publication, this, of itself, is an act of fraud both upon the court and the defendant in the action, and any judgment based thereon will be set aside in an action by the defendant constructively served against the plaintiff claiming the benefit of the judgment thus fraudulently procured, where no rights of innocent third parties claiming under the judgment are involved.

ID.—ACTION TO SET ASIDE JUDGMENT—FINDING OF WANT OF DUE DILI-GENCE.—In this action to set aside a judgment rendered in pursuance of a constructive service of summons, the findings that the plaintiff in the action in which the judgment was rendered had not used due, reasonable, or *bona fide* diligence to ascertain the whereabouts or address of the defendant therein, and that his statements in the affidavit that he had were false and untrue, are held to be sufficiently sustained by the evidence.

APPEAL from an order of the Superior Court of Los Angeles County refusing a new trial. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

Haas, Garrett & Dunnigan, and Haas & Dunnigan, for Appellant.

Sharp & Rech, for Respondent.

LORIGAN, J.—On June 29, 1904, the appellant, Judson, commenced an action entitled W. B. Judson *v.* C. S. Patrick et al., against this plaintiff and seventeen other parties to quiet his alleged title to various parcels of land in Los Angeles County, including lots fifteen and sixteen of the New York Tract, averring in his complaint that he was the owner in fee thereof and that defendants had no estate or interest therein. Service of summons was by publication, the order of the court therefor being based on the verified complaint in said action and an affidavit of plaintiff made and filed therein in which he stated that he had examined "the great register of the city and county of Los Angeles . . . the tax-roll for several years last past . . . and did not find the addresses therein of any" of twelve of the defendants in said action (mentioning them), including the present plaintiff; that he had made "numerous inquiries as to the residence of each and every of the above named defendants from . . . Julius Lyons, Esq., A. H. Judson, the county tax-collector, auditor and county recorder . . . also W. R. Jones, H. A. Greenwald and A. G. Strain" all of Los Angeles County "and also numerous other people who would be likely to know the whereabouts of the above named defendants and each and every of them replied that they did not know the address or addresses of any of said above named defendants . . . wherefore affiant says that after using due diligence and making numerous inquiries and search for the place of the residence of each and every of said defendants . . . that said defendants cannot be found within the state of California or personally served with process therein"; that summons had been issued and return thereon made by the sheriff of Los Angeles County that he could not find any of the defendants within the county of Los Angeles. An order for publication was made on this affidavit, publication had, the default of the defendants entered and judgment thereafter entered on January

25, 1905, in favor of plaintiff Judson in that action as prayed for in his complaint.

In December, 1907, this action was brought by the present plaintiff for a decree setting aside the said judgment of Judson *v.* Patrick et al., in so far as it affected the title or interest of plaintiff to lots fifteen and sixteen in the New York Tract included in the said judgment, on the ground that said judgment was procured through fraud on the part of appellant and was void as against this plaintiff. In support of this claim it was alleged that since 1888 plaintiff had been and now was the owner of said lots fifteen and sixteen; that the only claim said Judson ever had to said property was under a tax deed issued on a sale of said property for delinquent taxes for the year 1891, which deed was void; that said Judson, as plaintiff in the action of Judson *v.* Patrick et al. at the time he filed his complaint therein had no right, title, or interest in said lots, and that said statement in his verified complaint that he was the owner of said property was false and known by him at that time to be false; that the statement contained in the affidavit of said Judson for the order of publication of summons, that he Judson had inquired of the county tax-collector who replied that he did not know the address of the plaintiff herein, was false and known to be false by Judson at the time said affidavit was made by him; that said affidavit was false and fraudulent in that said Judson did not use due diligence in attempting to ascertain the address or whereabouts of plaintiff in this, that he was then well acquainted and had business dealings with his grantor under the tax deed, Julia Rodgers, and her husband, Ralph Rodgers, from whom the present plaintiff had purchased the said real estate, and by the exercise of reasonable diligence could have ascertained by inquiry of them the whereabouts and address of this plaintiff; that plaintiff herein was never served personally with summons in said action and had no knowledge whatsoever of said action or judgment until about February 1, 1907. In praying that said judgment be set aside plaintiff offered to pay the defendant Judson the amount necessary to redeem the tax sale above referred to.

On the trial of the action the court found that for more than twenty years last past plaintiff herein had resided continuously in the city and county of San Francisco; that on

March 18, 1891, plaintiff was the owner of said lots fifteen and sixteen of the New York Tract, on which date the tax-collector of said county sold said property to one J. N. Rodgers (known as Julia A. N. Rodgers) for delinquent state and county taxes for the year ending June 30, 1891, and on June 20, 1904, said tax-collector made her tax deeds therefor; that on or about June 1, 1904, said J. N. Rodgers had conveyed said lots to the defendant herein, Judson; that said Rodgers had no title or interest in said property other than what she acquired under said tax deeds, and that said tax deeds were null and void; that the allegation in the verified complaint of the defendant herein, as plaintiff in said action of Judson *v.* Patrick et al., that he was the owner of said lots in fee was false and untrue; that he did not have any title or interest therein; that at the time of the filing of said complaint he did not have actual knowledge that he had no right or title therein and was not guilty of intentional fraud in bringing and prosecuting said action; that the affidavit filed by him for the purpose of procuring an order for the publication of summons and service thereunder was false and untrue in this, that he did not use due, reasonable or *bona fide* diligence or make reasonable efforts to ascertain the address or whereabouts of the plaintiff herein at or before the making and filing of said affidavit.

The court further found in several other findings that it was not true as stated in said affidavit that Judson had made numerous inquiries and searches for the place of residence of plaintiff; nor was it true that plaintiff could not be found within the state of California; but on the contrary, if Judson had made due, reasonable, or proper inquiries, or used due diligence, and had made numerous or proper inquiries or search for the place of residence or whereabouts of plaintiff, as was reasonably and properly required of him, he would have learned and ascertained the residence or whereabouts of the plaintiff.

It was specially found by the court that the said lots involved in said judgment had been assessed to the plaintiff for fifteen years last past and with the exception of the taxes for the year ending June 30, 1891, he had paid all the taxes assessed thereon; that at the time Judson filed his affidavit in the action of Judson *v.* Patrick et al., and for a long time

prior thereto there was and had been on file in the tax-collector's office of the county of Los Angeles a letter from plaintiff herein in reference to taxes assessed against the property involved here; that said letter was open to public inspection upon proper request therefor; and that said letter gave the address of plaintiff herein; that Judson did not make such inquiry of the tax-collector as was reasonably and properly required of him and was guilty of gross negligence amounting to fraud in failing to make such reasonable and proper inquiry of the said tax-collector of the address or whereabouts of the plaintiff.

As conclusions of law the court found that Judson committed and was guilty of fraud against plaintiff herein, and the court in making and filing his affidavit in said action of Judson *v.* Patrick et al., and in securing an order for publication of summons in said action and through procuring judgment thereon in said action against plaintiff herein based on said publication of summons; that on payment of fourteen dollars and twelve cents, the amount required to redeem said property from said tax sale, for the use of Judson the plaintiff have a decree canceling and setting aside the judgment rendered in favor of Judson in as far as it affected the plaintiff herein or his title or interest in said lots fifteen and sixteen of said New York Tract. Judgment was entered accordingly and defendant moved for a new trial, which being denied, he appeals alone therefrom.

No question is made on this appeal but that the findings as made sufficiently sustain the judgment.

The sole point presented is as to the sufficiency of the evidence to sustain the findings of the court on the matter of the due diligence exercised by the appellant to ascertain the whereabouts or address of the respondent when he commenced the action of Judson *v.* Patrick et al., and made the affidavit for an order for the publication of summons. The claim of appellant is that the finding in this respect is not sustained by the evidence, but that it shows the utmost good faith on his part in trying to ascertain such whereabouts. Whether it does or not is the main point in controversy in this appeal.

It appears therefrom that prior to 1887 and continuously thereafter respondent resided in the city of San Francisco where until the great fire of 1906 he conducted a barber shop

called the Metropolitan Barber Shop. In 1887 one Ralph
Rodgers was the owner of a large tract of land in Los Angeles
County near the town of Garvanza, which he plotted into lots
and blocks as a subdivision to said town to be known as the
New York Tract. In that year he placed the tract on the
market, disposing of the lots by auction and lottery, prin-
cipally the latter, held in the town of Garvanza. An auction
was also had in San Francisco and the respondent acquired
his lots thereat in 1887 and procured a written agreement for
the sale thereof signed by Ralph Rodgers. Rodgers there-
after transferred all his interest in the tract to one Newton,
who conveyed it to one Childress as trustee, and in 1888 the
latter made the deed to respondent. It was understood by
the appellant that Childress, while describing himself in the
deeds made to respondent and various others simply as
"trustee," was in fact, while the conveyances did not disclose
it, acting as such for the benefit of Ralph Rodgers. These
matters were all known to appellant several years before he
acquired the deed from Julia N. Rodgers, wife of Ralph
Rodgers, to the lots involved here and at the time he brought
his action against respondent and others, except that he did
not know that an auction had been held in San Francisco
or that the contract of sale to respondent had been signed by
Ralph Rodgers.

Appellant had acquired a familiarity with the records and
matters pertaining to the tax-collector, assessor, and recorder's
offices and in 1902 had entered into a contract with Julia N.
Rodgers, wife of said Ralph Rodgers, to clear up the title
to property in and about Garvanza and in the New York
Tract, to which she made claim, and with that end in view
had made an abstract from the records of the entire town of
Garvanza and the New York Tract, embracing some thousand
titles, including that of respondent. Appellant himself had
acquired title to some thirty or forty lots in the New York
Tract. The general locality in which respondent's lots were
located was unimproved and there were no houses in the
immediate vicinity thereof. While acting for Mrs. Rodgers
in endeavoring to clear up her title to the property claimed
by her, which embraced property acquired by her through
tax-sales, and with a view of making the necessary affidavits
respecting service of notice of application for tax deeds under

the tax system then prevailing, the appellant made some search or inquiry as to the address or whereabouts of respondent and other tax delinquents. These were made within two years before bringing the suit to quiet title, though some were made about the time it was brought. As to the nature and character of these inquiries, appellant testified that he examined the great register of Los Angeles County, the index to the tax-rolls for several years, and the city directory of the city of Los Angeles, and inquired of people living out in Garvanza—people who had lived there several years and who might possibly know any of the old-timers who had lived there before appellant's time. As to the old-timers he only mentioned three, and none of these are mentioned by name in the affidavit for publication. What particular advantage they had of possessing knowledge of the whereabouts of respondent, the evidence of the appellant does not disclose. Nor is it apparent how appellant expected to ascertain the whereabouts of respondent from the great register, tax-rolls or city directory, as he testified that, while making these inquiries, he did not suppose that respondent was a resident of the county. As to the inquiries made by him of the persons actually mentioned in his affidavit, he inquired of W. R. Jones, but all that appears respecting Jones is that he lived in Los Angeles City. There is nothing in the testimony to indicate how he could expect any enlightenment whatever of the whereabouts of respondent from Jones, or why he should inquire of him rather than any other resident of Los Angeles City. He asked H. Greenwald and H. G. Strain. Greenwald was a collector in Los Angeles, and appellant had often heard him speak of old residents of Los Angeles, and for that reason he made the inquiry of him. Strain was likewise an old resident of the same county. He inquired of him for that reason. Whereabouts in the county Greenwald or Strain resided when his inquiries were made, appellant did not know, nor did he know at the time of the trial. A. H. Judson, since deceased, was the father of appellant, and Julius Lyons was the attorney for appellant in the suit to quiet title involved here. How either of these two was in a position to enlighten appellant on the subject of the whereabouts of respondent is not shown, and while appellant states in his affidavit and testified on the trial that he had made numerous inquiries of

other people likely to know the whereabouts of respondent, aside from the persons above referred to, no person was specifically mentioned by name on the trial as embraced within that number.

In addition appellant testified, as he stated in his affidavit, that he inquired of the tax-collector the address of the respondent, and was informed by him that he did not know. As far as this inquiry is concerned, it appears that when appellant visited the tax-collector's office he had a list of names respecting six or seven pieces of property in the New York Tract which he wanted to take out deeds for—apparently deeds under tax-sales—and asked the tax-collector if he knew any of those parties or where he could find out about them, or be referred to any one who might know them, and received a negative answer from the tax-collector. This was all the inquiry made at that time, and this was the manner of making it. When appellant made his inquiries he knew of the deed to respondent for these lots and that thereafter he continued to be the record owner thereof; that they had always been assessed in his name, and that every year, with the exception of the year 1891, the taxes were being paid on them by some one, and, of course, presumably by the respondent, who was the owner and to whom they were assessed. In making his inquiry of the tax-collector, appellant did not inform him that the property was assessed to the respondent, whose whereabouts he was seeking to ascertain, nor call the officer's attention to the assessment to respondent as it stood upon the assessment-roll. He merely made the general inquiry as to the several parties on his list and contented himself with the response he got.

Now it appears that for the years 1902 and 1903, at the time appellant made his visit to the tax-collector's office, there appeared upon the assessment of the property to respondent for each of these years, or was written across the face thereof, certain numbers which had reference to correspondence or letters on file in the tax-collector's office in relation to the taxes assessed against this property, and that if the appellant, instead of making a general inquiry directed simply to the whereabouts of respondent among others, had called the attention of the tax-collector to the fact that the property was assessed to the respondent, the tax-collector would have

referred to the letters indicated by the numbers on the assessment and endeavored to ascertain therefrom the address of the respondent. The figures indicated the existence of such correspondence at the time appellant was making his general inquiry, and the evidence showed that respondent had always in the matter of taxes upon these lots written to the tax-collector to ascertain the amount of his taxes, and upon receipt of an answer had forwarded it by letter to him.

Aside from this, it appears that Ralph Rodgers, with whom appellant was well acquainted, had a book containing a record of the sales made by him in the New York Tract, including that to respondent, which would have shown that these lots were sold to the respondent in San Francisco at the auction sale held there, and that he could and would so have informed appellant had he made an inquiry of him. Appellant understood long before his suit against respondent to quiet title that Ralph Rodgers had subdivided this tract, placed it upon the market, and sold the lots at auction and otherwise, and that in making the deeds to the parties Childress was acting simply as his trustee. Appellant had on several occasions written Childress to ascertain the residence or whereabouts of grantees in deeds made by him, and was told by Childress that he did not know of them, as he was simply a trustee in making the conveyances. Childress did not state for whom he was acting as trustee, but it appears to have been generally understood in the neighborhood where a great many controversies existed between Rodgers, his wife, and his creditors respecting the lands located in the New York Tract and in Garvanza, that he was trustee for Rodgers, and appellant so understood. Possessing this information, in the exercise of the most ordinary diligence, he should have made inquiry of Rodgers. The only reason assigned by him for failing to do so in this instance was that, owing to some litigation, there existed an ill feeling between them. While this might have been an excuse for failure to make a personal inquiry, it afforded no reasonable excuse on the part of the appellant for failing to make the inquiry at all. He could readily have sent some third party to have made it, just as he had done in other instances he mentioned, and if he had done so he would have received the information which Rodgers possessed.

Again, it further appears that the deed of these lots to respondent was filed at the request of Wells, Fargo & Company. Appellant testified that in examining the deed to respondent he did not discover this, but in the exercise of due diligence he could have and should have discovered it. It was there plain enough. The fact that the deed was filed for record by Wells, Fargo & Company would have disclosed to appellant, if he had been ordinarily careful in examining it, a source from which he might, and in all probability would, have discovered from whence and by whom the deed had been sent through the company for recordation, and hence have been put in the way of ascertaining the location of the respondent.

The law permits, under some circumstances, a plaintiff to procure an order for the publication of summons where the defendant in the action, after the exercise of due diligence on the part of the plaintiff, cannot be found within the state, and the fact is so made to appear by affidavit by or on behalf of the plaintiff. Such an affidavit is always *ex parte,* and the court, when it is sufficient in form, must accept and act upon it and grant the order. But in proceeding to avail himself of this statutory mode for constructive service of summons, a plaintiff must, in fact, have exercised due diligence. A mere formal compliance with the provisions of the statute, or a statement to that effect in his affidavit, will not suffice; nor will an order for publication based upon such an affidavit, or a judgment following a service by publication thereon, be conclusive of the fact that such diligence was exercised. The question is open as between the parties under a direct attack on the ground of fraud on the part of plaintiff in procuring the judgment, which is the attack made here. When a false affidavit is presented to the court for the purpose of obtaining an order for the service of summons by publication, this, of itself, is an act of fraud both upon the court which was induced to make the order thereon, and equally a fraud upon the defendant in the action, and any judgment based thereon will be set aside in an action by the defendant constructively served against the plaintiff claiming the benefit of the judgment thus fraudulently procured and where no rights of innocent third parties claiming under the judgment are involved.

Here the evidence fully warranted the court in concluding that the investigation which the appellant claims to have made to ascertain the whereabouts of a number of persons against whom he contemplated suit, including this respondent, was a mere perfunctory one; amounting to no more than a mere form of investigation which of itself would indicate lack of good faith in making it. When, in addition, there is taken into consideration that there were sources from which he could obtain information if his inquiry had been pursued with ordinary care and candor, as the law requires he shall exercise, and other sources of which he had knowledge, or should have had, from which the residence and whereabouts of the defendant might have been ascertained, there can be no question but that the findings of the court that the appellant had not used due, reasonable or *bona fide* diligence to ascertain the whereabouts or address of respondent and that his statements in the affidavit that he had were false and untrue, are sufficiently sustained by the evidence.

The order appealed from is affirmed.

Henshaw, J., and Melvin, J., concurred.