[S. F. No. 11159.   In Bank.—May 29, 1925.]

HENRY McGUINNESS, as Executor, etc., et al., Petitioners, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

[1] DIVORCE—MOTION TO SET ASIDE DECREE—FRAUD—PARTIES IN INTEREST.—Upon a motion by a widow to set aside a decree of divorce alleged to have been granted by fraud extrinsic to the action, the executor of the will of the husband, who died after the entry of the decree of divorce, and legatees under the will, have a standing to appear and resist the motion, as well as to appear in a proceeding in prohibition instituted to restrain the superior court and the judge thereof from proceeding further in the divorce action.

[2] ID.—MOTION TO SET ASIDE DECREE—FRAUD—JURISDICTION.—In a suit for divorce, where, after the entry of the interlocutory decree, the parties resumed marital relations and during said time the husband obtains a final decree of divorce, without the knowledge of the wife, the facts constitute extrinsic fraud and the court before which the action was pending retains jurisdiction to set aside the decree upon the motion of the wife.

[3] ID.—ENTRY OF FINAL DECREE OF DIVORCE — MINISTERIAL ACT.—
Under section 132 of the Civil Code, providing for the entry of a
final decree of divorce one year after the entry of the interlocutory
decree, the entry of the final decree by the court is in the nature
of a ministerial act, which it must, on the motion of either party,
perform whenever the facts are shown entitling the movant to such
final decree and which *mandamus* may be invoked to compel the
court to perform in a proper case.

[4] ID.—MOTION TO SET ASIDE JUDGMENT—SECTION 473, CODE OF CIVIL
PROCEDURE.—A trial court has inherent power to set aside a judg-
ment obtained through a fraud committed upon it, and its right so
to do is not derived from section 473 of the Code of Civil Pro-
cedure, nor limited to the time therein specified.

[5] ID.—DEATH OF PARTY—RIGHT TO PURGE RECORD OF FRAUDULENT
DECREE.—In a suit for divorce which was brought solely to sever
the marriage relation and involved no property rights, the court
retains jurisdiction to purge the record of the decree, on the motion
of the wife based upon the fact that it was obtained by extrinsic
fraud, although the husband died after the final decree was entered.

(1) 19 C. J., p. 171, n. 91.    (2) 19 C. J., p. 166, n. 28.    (3) 19
C. J., p. 159, n. 90; 38 C. J., p. 634, n. 45.    (4) 19 C. J., p. 164,
n. 92.    (5) 19 C. J., p. 170, n. 74.

APPLICATION for a Writ of Prohibition to prevent
proceeding in a suit for divorce to vacate the final decree.
Writ denied.

The facts are stated in the opinion of the court.

Chenoweth & Leininger and Maxwell McNutt for Peti-
tioners.

R. A. Rogers for Respondents.

RICHARDS, J.—The petitioners seek by this proceeding
to have this court issue a writ of prohibition which will
have the effect of restraining the respondents, Superior

3.    See 9 Cal. Jur. 766.
4.    Power of court to revoke divorce decree for fraud, note, 18
Ann. Cas. 1002.    See, also, 9 R. C. L. 448; 9 Cal. Jur. 750.
5.    Direct proceeding brought by surviving party to divorce action
to vacate decree after death of other party, notes, 5 Ann. Cas. 892;
Ann. Cas. 1915B, 369; Ann. Cas. 1917A, 595.    See, also, 9 R. C. L.
453.

Court in and for the City and County of San Francisco and the judge thereof, from taking further proceedings in a certain action entitled "Josie White, Plaintiff, *versus* James S. White, Defendant," and numbered therein 69960, and which had theretofore been pending in said court. The matter came on for hearing upon a demurrer and also an answer to the petition, the denials in which were not insisted upon at the hearing or upon the rehearing, the only matters presented being the questions of law raised by the demurrer. The conceded facts in the case are that in the year 1915 Josie White commenced an action in said Superior Court wherein she sought a divorce upon the ground of extreme cruelty. In the complaint therein there was no allegation as to property rights nor did the answer of the defendant raise any such issue. Upon the trial and submission of the cause the court, on December 14, 1915, duly gave, made, and entered its interlocutory decree in favor of the plaintiff, adjudging her to be entitled to a divorce upon the specified ground, but being silent upon the subject of the property rights, if any, of the parties to the action. Succeeding that date and decree the record in the case was silent until the third day of July, 1923, when it appears that upon motion of the defendant a final decree was entered dissolving the marriage relation between the parties to said action, but which final decree was also silent as to any mention or adjudication of property rights. Thereafter, and on the seventeenth day of October, 1923, James S. White, the defendant in said action, died leaving a last will and testament in which Josie White, his divorced wife, was omitted from any mention or bequest. Said will was offered for and admitted to probate in the probate department of said court and the petitioner herein, who was named in said will as the executor thereof, was duly appointed to serve and is serving as such executor. Thereafter and on January 24, 1924, Josie White filed in said Superior Court and in said divorce action a notice of motion to set aside said final decree of divorce, wherein she set forth as the basis of said motion the alleged fact that during the several years elapsing between the making and entry of the interlocutory decree and the aforesaid final decree the parties to said action had lived together as husband and wife and were so living at the time of the making and entry of said final decree of

divorce upon the defendant's motion; and that said final decree had been so entered without her knowledge or consent. The petitioner herein, Henry McGuinness, in his capacity as executor of said will and also as a legatee thereunder, and the petitioner herein, John Maher, also as a legatee under said will, appeared specially in response to said notice of motion and objected to the hearing or granting of the same upon the ground that the said Superior Court had lost jurisdiction therein and in said action and that it had no jurisdiction over said action other than to decline to hear and either to grant or deny said motion. Upon the hearing upon said motion and these special appearances and objections thereto, the said Superior Court through the judge thereof, who is also respondent herein, decided that it had and has jurisdiction to entertain said motion and set the hearing thereon for the twenty-second day of May, 1924. Thereupon and on May 20, 1924, the petitioners herein applied to this court for and were granted an alternative writ of prohibition restraining said Superior Court from further proceeding in said action and upon said motion except to dismiss or deny the same until the hearing upon said writ. Upon said hearing the petitioners insisted, and still insist, that the respondent Superior Court and the judge thereof is without any jurisdiction to hear or pass upon the said motion of Josie White for an order setting aside the final decree in said divorce action for the reasons set forth in their said petition. The respondents, on the other hand, insist that since it appears upon the face of the notice of motion to set aside said final decree, as the ground thereof, that the entry of said final decree in said action was procured by extrinsic fraud on the part of said James S. White, the defendant therein, consisting in his concealment of the asserted fact that for the several years elapsing between the making and entry of the interlocutory decree in said action and the date of said final decree the said parties to said action had been and still were living together in the relation of husband and wife; and that the said court, being deceived and misled by such concealment, had been fraudulently induced to sign and enter said final decree, the said court, notwithstanding the intermediate death of said James S. White, had and has power and jurisdiction either upon motion of the plaintiff in said divorce action or upon

its own motion to act in the matter of investigating said alleged acts of extrinsic fraud; and, in the event of finding its existence to purge its records of the decree obtained through its exercise. The respondents herein, the said Superior Court and the judge thereof, in their answer herein allege the fact to be that the said court is engaged upon its own motion in conducting an investigation as to whether or not such fraud was committed upon said court in the procurement of said final decree and that it has not yet directly or indirectly intimated what the judgment of the court will be as a result of such investigation.

[1] The first contention which the respondents herein make upon the threshold of this proceeding is that the petitioner Henry McGuinness in his capacity as executor of the will of James S. White, deceased, and that both of the petitioners herein in their capacity as legatees under said will have no legal capacity to appear either in said divorce action or in this proceeding in opposition of the effort of Josie White to have set aside the final decree of divorce therein. We think this contention is without merit since, assuming that the power and duty of an executor to intervene in an action which involved only the personal status of his testator in a divorce action has been doubted in the case of *Kirschner* v. *Dietrich,* 110 Cal. 502 [42 Pac. 1064], the executor and petitioner herein appears not alone in the capacity of executor, but he and his associate petitioner Maher herein also appear in the capacity of legatees under the will of the deceased defendant in the divorce action; and since whatever the purpose which the plaintiff has in that proceeding the obvious effect of her success therein would be that of re-establishing the status existing between herself and her deceased husband prior to the entry of said final decree as the undivorced wife of said deceased; and since the re-establishment of this status would entitle her to assert certain wifely rights in relation to the property of said estate in which as legatees they each have an interest and which, if so asserted, they would admittedly have a right to resist, they claim to have an equal right to appear at the very inception of the plaintiff's effort to obtain standing ground for the assertion of such rights and to oppose such effort. No authorities are cited contravening this reasoning and we are satisfied none exist.

[2]   This brings us to the only remaining inquiry herein, which is as to whether the trial court in the divorce action, or the judge thereof, the respondents herein, retains or has any jurisdiction either upon the motion of the plaintiff in said action or upon its own motion to consider or decide the question as to whether the final decree of divorce therein was caused to be made and entered by the fraud of the defendant in said action practiced upon it and whereby it was misled into granting and entering said final decree. The petitioners herein assert that the trial court in said action retains and has no such jurisdiction, basing their contention in that regard upon two several reasons:

First—That said final decree of divorce being valid upon its face the trial court has no jurisdiction to set it aside either upon the plaintiff's motion or upon its own motion after the expiration of the six months' period prescribed in section 473 of the Code of Civil Procedure. Second—That the defendant in said divorce action having died subsequent to the entry of said final decree, the action was thereby abated and is no longer pending in said court for the reason that the marriage relation between the parties has been dissolved by the defendant's decease. For the purpose of passing upon each of these objections it must be assumed in the state of the record before us that the averments made by the wife as to the basis of her application for the relief in the divorce court are true; that a reconciliation had taken place between the parties to said divorce action shortly after the entry of the interlocutory decree therein; that they had reassumed their marital relations and thereafter continued living together as husband and wife for several years and were so living together in that relation when the husband, unknown to the wife, procured the entry of the final decree of divorce; that in so doing he had committed a fraud upon her and upon the court through his action in procuring said decree and through his fraudulent concealment from the court, at the time of his application for and of the entry of said final decree, of the fact of such reconciliation and consequent resumption and existence of marital relations between himself and his wife; and that the court by such concealment was deceived and misled into granting and entering said final decree of divorce. These facts being thus, for the purposes of this

proceeding taken to be true, the primary question arises as to whether they constitute intrinsic or extrinsic fraud. If the former, it would seem to be settled under the authorities, that, the time for appeal from said decree having expired, and the time for seeking relief under section 473 of the Code of Civil Procedure having elapsed prior to the application of the plaintiff in that action to have said decree set aside, the trial court had lost jurisdiction over said action to grant relief under said section (*People* v. *Mooney,* 178 Cal. 525–530 [174 Pac. 325]).

We do not think, however, that the facts of this case as above outlined constitute this a case of intrinsic fraud as that term is defined in the case of *People* v. *Mooney, supra,* or in the case of *Pico* v. *Cohn,* 91 Cal. 129 [25 Am. St. Rep. 159, 13 L. R. A. 336, 25 Pac. 970, 27 Pac. 537], or in the case of *Flood* v. *Templeton,* 152 Cal. 148 [13 L. R. A. (N. S.) 579, 92 Pac. 78], or in the case of *United States* v. *Throckmorton,* 98 U. S. 61, 66 [25 L. Ed. 93, see, also, Rose's U. S. Notes], upon the reasoning in which latter case the former three cases were decided. In each of the three former cases the fraud which was held to be or defined as intrinsic fraud was such as occurred in the course of an adversary proceeding; such as the production of perjured testimony or forged documents during a trial wherein the adversary party had the opportunity to make the truth appear. In the case of *United States* v. *Throckmorton, supra,* the supreme court of the United States after instancing situations in which the fraud practiced upon the adversary party or the court would be intrinsic fraud points out the line of demarcation between these instances and those wherein by reason of something done by the successful party to a suit there was in fact no adversary trial or decision of the issue in the case; as ''where the unsuccessful party has been prevented from fully exhibiting his case by fraud or deception practiced upon him by his opponent, as by keeping him away from court by a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where an attorney regularly employed corruptly sells out his client's interest to the other side,—these and similar cases which

show that there has never been a real contest in the trial or hearing of the case''; such are, in the view of that tribunal, instances of extrinsic fraud. In the recent case of *Simonton* v. *Los Angeles Trust & Sav. Bank*, 192 Cal. 651 [221 Pac. 368] it was held by this court that the fraudulent concealment or omission through mistake of an executrix to account for personal property belonging to the estate of the decedent with the result that such property was appropriated by such executrix for her own personal use and benefit constituted extrinsic fraud and this court in that case cited numerous other cases in this and other courts supporting the principle illustrated in the Throckmorton case. It seems to us that the facts of this case bring it by clear analogy within the doctrines thus laid down defining cases of extrinsic fraud. In the case in hand there was no adversary proceeding attending or embracing the action of the court in the divorce action at the time of the application for and entry of the final decree. [3] Section 132 of the Civil Code provides that when one year has expired after the entry of an interlocutory judgment in a divorce action the court ''on motion of either party, or upon its own motion may enter the final judgment granting the divorce.'' Such final decree may be entered *ex parte* and its entry by the court is in the nature of a ministerial act which the court must, on motion of either party, perform whenever the facts are shown entitling the movant to such final decree and which *mandamus* may be invoked to compel the court to perform in a proper case. It was so held by this court in the case of *Olson* v. *Superior Court,* 175 Cal. 250 [1 A. L. R. 1589, 165 Pac. 706]. In the instant case the wife not only had no knowledge of her husband's action in seeking and obtaining the entry of such final decree and hence no opportunity to appear and resist such action, but by the reconciliation and resumption of marital relations between herself and her husband and by long years of cohabitation she had apparently been led to regard the divorce proceedings between them as obliterated and their marital union as completely restored. That her husband having resumed and while occupying these relations toward her should have covertly sought the divorce court, *ex parte,* and without any notice or knowledge imparted to her, have there caused to be entered a decree of final divorce ap-

parently in her favor, but which would have the effect of rendering the relations between himself and his former wife meretricious was, upon the face of the showing thus far made in this proceeding, a fraud of the most despicable quality and was a fraud which was essentially extrinsic in character since it was such a fraud as she had no opportunity to combat or protect herself against in the proceeding by which *ex parte* and through an imposition practiced upon the court he obtained the entry of said final decree. It was also extrinsic fraud in so far as the court itself granting such decree was concerned since it was effected through concealment from the court in an *ex parte* proceeding of facts which the defendant in said action was bound to disclose and which if disclosed would have rendered improper the granting and impossible the procurement of such final decree. In the case of *Olson* v. *Superior Court, supra,* it was pointed out that one of the great purposes of the law enforcing the delay of one year before the absolute severance of marriage ties was to provide a period during which the parties might become reconciled and thus avoid the unhappy consequence of a final decree of divorce; and that where such reconciliation had occurred and the parties were living together in their restored marital relationship it would be a grave reproach upon our jurisprudence that a final decree of divorce could be forced upon a blameless and nonconsenting wife after such reconciliation. Yet this is precisely what would be accomplished in this case if the fraud practiced upon both the plaintiff and the court were held to be intrinsic and thus beyond the power of the court to avoid its consequence after the time for appeal and for application under section 473 of the Code of Civil Procedure had expired.

[4] The petitioners, however, contend that whether the fraud be extrinsic or intrinsic is immaterial, since the final decree is valid upon its face and that a judgment, no matter how much tinctured with either form of fraud, if not void upon its face is only assailable in the court in which it is rendered under and within the time provided in section 473 of the Code of Civil Procedure. The cases cited by the petitioners in support of this contention do not support it. In the case of *People* v. *Dodge,* 104 Cal. 487 [38 Pac. 203], the ground for the relief sought was not fraud but was an

alleged defective service of summons. The case of *People* v. *Davis,* 143 Cal. 673 [77 Pac. 651], was a similar case involving no question of fraud in the procurement sought to be set aside. The case of *Suttman* v. *Superior Court,* 174 Cal. 243 [162 Pac. 1032], while it arose out of an action for divorce and involved the erroneous action of the trial court in setting aside an interlocutory decree without notice to the adversary party thereto, involved no issue of fraud. The case of *Bancroft* v. *Bancroft,* 178 Cal. 359 [173 Pac. 579], was a proceeding wherein one of the parties to a previous action for divorce was seeking relief in an independent action in equity from a decree of divorce obtained through a collusive agreement between the parties to such divorce action, and the language of the court cited by counsel was used in commenting upon certain other cases wherein relief had been sought under section 473 of the Code of Civil Procedure and is to be confined in its application to the particular cases to which it referred. On the other hand, this court in the case of *Ex-Mission L. & W. Co.* v. *Flash,* 97 Cal. 610 [32 Pac. 600], has held that a motion to set aside a judgment upon the ground of fraud in its procurement is not subject to the six-months' limitation provided in section 473 of the Code of Civil Procedure; and in the opinion in that case it is pointed out by the court that said section of the code while providing for relief in cases of "Mistake, inadvertence, surprise or excusable neglect" does not include "fraud" among the grounds upon which relief from a void or voidable judgment may be sought under its terms. In the case of *Williams* v. *Reed,* 43 Cal. App. 425 [185 Pac. 515], it was held that the trial court has inherent power to set aside a judgment obtained through a fraud upon the court and that its right to so act or grant relief is not derived from section 473 of the Code of Civil Procedure. It is true as the petitioners assert that this holding may have been *obiter* in that case. It is also true that it rests for its authority upon the case of *Stierlen* v. *Stierlen,* 18 Cal. App. 609 [124 Pac. 226, 228], wherein similar language is employed, and that certain broad language in the latter case was disapproved by this court upon its denial of a petition for rehearing therein, but the Stierlen case was, as to its facts, a case wherein the motion made in the trial court was one to set aside

a judgment in an action for divorce obtained through fraud committed both upon the court and the adverse party; and while certain language of the appellate court in dealing with this phase of the case was so broad as to apply to all void judgments and hence was properly subject to the criticism made upon rehearing, the unmodified portion of the opinion in that case correctly states the rule to be that ''the power to vacate upon motion a judgment obtained by fraud is in- herent in courts of general jurisdiction, and that the same may be exercised after the lapse of the statutory time which limits the entertainment of applications based upon sur- prise, inadvertence and so forth, provided that such motions are made within a reasonable time. What is a reasonable time is a matter of sound legal discretion in the court in which the motion is made.'' We are, therefore, of the opinion that there is no merit in the petitioners' contention that the plaintiff in the divorce action had lost the right to make her motion to set aside said final decree in the trial court upon the ground of fraud committed upon herself and upon the court in its procurement because her said motion was not made within the time prescribed in section 473 of the Code of Civil Procedure.

[5] This brings us to the second and most serious con- tention of the petitioners herein, which is that the divorce action being one brought solely to sever the marriage rela- tion between the parties thereto and in which no property rights of the parties were involved, and both the inter- locutory and final decrees in said action being confined to such purpose, the said action abated upon the death of the party defendant subsequent to the entry of said final de- cree and the trial court thereby lost jurisdiction to take any action whatever in said case. The petitioners in making this contention rely strongly upon the cases of *Begbie* v. *Begbie*, 128 Cal. 154 [49 L. R. A. 141, 60 Pac. 667] and of *Kirschner* v. *Dietrich*, 110 Cal. 502 [42 Pac. 1064], as fully sustaining their said contention. The case of *Begbie* v. *Begbie, supra,* was one in which the court dismissed an ap- peal taken in a divorce action upon the ground that the defendant having died after the entry of the decree of divorce and the divorce action being one brought solely for the purpose of establishing her personal status as the wife of the plaintiff, the action had abated upon her death and

this court had thereby become deprived of the right to review the action of the trial court upon appeal. No question as to the right of the trial court to entertain a proceeding to purge its record of a decree of divorce fraudulently obtained was presented in that case. The court in its ruling relied upon its earlier decision in the case of *Kirschner* v. *Dietrich, supra.* The facts of the latter case and the relief sought therein differ, however, essentially from those of the case at bar. In that case there had been a judgment of divorce obtained by the wife upon service of summons by publication. The judgment in the plaintiff's favor was entered July 13, 1893. The plaintiff died February 22, 1894. An administrator was appointed in her estate. On June 8, 1894, the trial court made an order on motion of the defendant in the divorce action directing the substitution of the administrator of the deceased wife as a party plaintiff in her stead and directing that the action be continued in the name of such administrator. Thereafter the defendant, on notice to such administrator, moved the court under section 473 of the Code of Civil Procedure to vacate the judgment of divorce and that he be allowed to answer the complaint upon the ground that the summons had not been personally served upon him and that the judgment was void because procured by false testimony. The court denied his said motion. The defendant appealed. Under the foregoing state of facts this court held, and we think properly, that since the purpose of the defendant in making his said motion was to reopen and litigate the question as to whether the plaintiff was entitled to a decree of divorce, the plaintiff's death by severing the marital relation between the parties had abated the action which had that as its sole purpose and hence deprived the court in which said action had been pending of all power to review its action and determine her right to a divorce. But the case at bar presents an essentially different situation. The plaintiff by her motion made in the divorce action is not seeking to reopen said action for the purpose of further litigating the question as to whether she, or the defendant either, is entitled to a divorce. That question has been settled by the defendant's death and as to it or any further litigation regarding it in said action, it has been abated. But the plaintiff, notwithstanding the abatement

of the action in so far as the issues therein are involved, is seeking to invoke the power of the court over its own records, by suggesting and offering to show to the court that it has been imposed upon by the extrinsically fraudulent acts and concealments of the defendant while living with the plaintiff as his wife into the making and entry of a decree which it had neither the right nor power to make. This is the principal purpose of her said motion; and if the declared purpose of the trial court as affirmed in its response to this writ, is to be taken as true, this is the purpose which the said court and the judge thereof has in view in proceeding to the hearing upon the plaintiff's said motion which the petitioners by their application for this writ seek to prohibit. To such a purpose the death of the defendant in said action is merely incidental and is in nowise controlling upon the power of the court to purge its records of orders and decrees which the court has been wrongfully misled into making through the fraudulent imposition of a party to an action pending, at the time of such imposition, before it. To hold that the party having accomplished such imposition could by dying deprive the court of the right when properly advised to so purge its own records would be to abridge to the point of denial one of the most salutary of the inherent powers of the court.

In the case of *Rehfuss* v. *Rehfuss*, 169 Cal. 86 [145 Pac. 1020], this court directed attention to the fact that actions for divorce differ from ordinary suits between private parties in the degree of solicitude which the law as well as public policy imposes upon the courts in the interest of preserving the integrity of the marriage relation. The court says: "That relation is the basis of the family, the foundation of society. It cannot be destroyed by the mere consent, whim, or caprice of the parties to the marriage, nor can it be stipulated away in judicial proceedings. The relation can be dissolved only by consent of the state, and upon statutory grounds, presented in good faith to a court of competent jurisdiction. . . . It is the duty of the court, representing the state, in accordance with the letter and policy of the law, to guard strictly against fraud, collusion, or imposition when the husband or wife seeks to dissolve the bonds that bind them together. . . . Where it becomes manifest to the court before it loses jurisdiction of the case,

that a judgment decreeing a divorce has been obtained by collusive agreement between the parties, or through fraud practiced upon the court, the court has the inherent power to set aside the judgment. This it may do on its own motion." (Citing many cases.) The petitioners lay, we think, undue stress upon the phrase in the foregoing quotation "before it loses jurisdiction of the case" as indicating that the court had in mind either the limitation of time imposed by section 473 of the Code of Civil Procedure or the loss of jurisdiction caused by the death of one of the parties to the divorce action; but that the court did not refer to a loss of jurisdiction in the trial court from either of these causes would seem to be made clear, not only by reference to its earlier decision in the case of *Williams* v. *Reed, supra,* holding that applications for this form of relief were not governed by section 473 of said code, but also by reference to certain of the cases cited in support of its above ruling in the Rehfuss case; as in the *Matter of Boyd's Appeal,* 38 Pa. St. 241, wherein it was held that the court of common pleas had power to vacate and annul a decree of divorce obtained through fraud and imposition on the court after the death of one of the parties to the action. In Long on Domestic Relations, section 141, page 289, the rule is stated that a decree of divorce, which has been obtained by either party to the marriage by fraud may be set aside by the court in which the decree was rendered upon application of the party aggrieved; and the fact that the party who procured the divorce is dead does not necessarily defeat a proceeding to vacate the decree. The author cites in support of this doctrine *Lawrence* v. *Nelson,* 113 Iowa, 277 [57 L. R. A. 583, 85 N. W. 84], and *Johnson* v. *Coleman,* 23 Wis. 453 [99 Am. Dec. 193], and also cites 2 Bishop on Marriage, Divorce and Separation, sections 1549, 1554 and 1556, wherein it is stated that the death of the defrauding party, without unreasonable delay by the other, will not prevent the vacating of a decree of divorce in cases where a fraud has been practiced on the court by one of the parties to the action to the injury of another who is innocent, and that in such cases the proceeding for annulling the decree must be in the same court and cause wherein it was rendered and where remains the record which is to be vacated.

We are therefore satisfied that notwithstanding the fact that the divorce action had abated in so far as any further trial or determination of the issue as to the marital relations of the parties to it is concerned, the court retained its inherent power and jurisdiction to conduct the investigation into the integrity of its records which the plaintiff's motion suggests and which the court of its own motion is proposing to undertake. What was said by this court in the case of *Kirschner* v. *Dietrich, supra,* while correct in its application to that case, has no application to the proceeding which the petitioners herein seek to prohibit.

The application for a writ of prohibition is denied.

Shenk, J., Waste, J., Lennon, J., Seawell, J., and Lawlor, J., concurred.