[L. A. No. 9275. Department Two.—February 24, 1928.]

EDDY M. ALDRICH, Respondent, v. MARY M. ALDRICH, Appellant.

434

Schauer & Ryan for Appellant.

Mygatt, Robertson & Crawford for Respondent.

LANGDON, J.—This is an appeal from an order of the superior court of the county of Santa Barbara refusing to grant a motion by defendant to set aside a decree of divorce granted by said court to plaintiff. The interlocutory decree was entered in April, 1923, and the final decree was granted in April, 1924. No personal service was made upon the defendant, the summons having been served by publication. The motion to set aside the judgment was made on the ground that a fraud had been committed on the court by plaintiff in causing to be filed an affidavit to secure service on defendant by publication, which stated that defendant's last known place of residence was Vermont, when plaintiff well knew that defendant was a resident of Champlain, New York, and on the further ground that defendant re-

ceived no notice of this action and was thereby prevented from protecting her interests by defending the same.

Defendant, in her brief, advances additional reasons for granting said motion, i. e., that service by publication founded on this affidavit was wholly void and of no effect, and that the court obtained no jurisdiction over defendant, and that plaintiff never secured a *bona fide* residence in this state on which to ground this action. These matters were not raised by the motion made in the trial court and we shall not consider them upon appeal. Upon the questions raised by the motion of defendant, she filed an affidavit stating that the parties had married in Vermont and had lived together as husband and wife from 1896 to 1919, and that since that time they have been living separate and apart; that during said marriage the parties lived in New Hampshire and saved and invested the sum of twenty thousand dollars out of plaintiff's earnings as a locomotive engineer, and that this amount was invested in the name of plaintiff. The affidavit continues as follows: "That without cause, on or about the said 3rd day of June, 1919, plaintiff herein ordered defendant herein to return to her brother in Champlain, New York. She protested and wanted to stay with him in Nashua, New Hampshire, but he insisted and put her on the train after buying her a ticket to Champlain, where her parents lived. Shortly thereafter he sent her clothes, and though she begged to return he refused; that after said defendant was compelled to leave plaintiff, as aforesaid, he, the said plaintiff, transmitted to her the' sum of $50 nearly every month to live on, he, the said plaintiff, depositing the said amount for defendant in the Second National Bank of Nashua, New Hampshire; that the plaintiff well knew that defendant was living in Champlain, New York, as he had considerable correspondence with her through the medium of the said bank, and Champlain, New York, was the town to which he had forced her to go as aforesaid. That plaintiff kept up said payments of $50 a month until the month of January, 1924, when he ceased making the payments." Defendant then set forth that through the investigations of her attorneys she learned, in June, 1924, for the first time that plaintiff had secured a divorce and that he refused to pay further for her support. That thereafter a search was made by defendant's

attorneys through the records of New Hampshire to ascertain if plaintiff had secured a divorce in that state, and they could find no such record; that defendant had no knowledge of where plaintiff claimed to have secured such divorce; that after considerable searching through different firms of attorneys defendant learned, for the first time on September 27, 1924, that plaintiff had secured a divorce in California; that thereupon defendant, through her eastern attorneys, took the matter up with a California firm of attorneys and it was not until October 24, 1924, that a report was received from said California attorneys, which was sent to defendant several weeks later; that with due diligence she took up the matter with the attorneys in California, making her motion in April, 1925.

· The plaintiff meets this affidavit by the following evasive and nonrelevant allegation in his affidavit: "That I personally spoke with John Betters, now deceased, and Fred Betters of Nashua, New Hampshire, as to the whereabouts, if they knew, of Mary M. Aldrich. Previous to the service of the libel on Mary M. Aldrich, both John Betters and Fred Betters returned to their home in Champlain, New York, and had previously thereto moved from said Champlain." There is no allegation as to what John and Fred Betters replied to plaintiff's alleged questions, and there is no denial of the facts which would show personal knowledge of defendant's whereabouts on the part of the plaintiff. The only portion of the affidavit of plaintiff which has any force or effect herein is the portion wherein he states that in January, 1924, before the final decree of divorce, he sent defendant her customary yearly railroad pass, which she returned to the office of the railroad, stating that she was not entitled to it as divorce proceedings were pending. He further alleges: "Since Mary M. Aldrich left her home in Nashua, New Hampshire, no correspondence was made between herself and myself, *excepting two or three letters* relative to money."

Plaintiff filed a second affidavit, the only portions of which are pertinent upon the motion before the court are the following: "That on the 3rd day of June, 1919, she (defendant) returned to Champlain, New York, to live with her brother without my knowledge or consent," and that when she returned to Champlain, New York, she used her yearly

railroad pass and "that her said statement that I put her on a train after buying her a ticket is not, and cannot be true." It is to be observed that plaintiff does not deny that he put her on a train for Champlain, New York, but only that he put her on a train after buying her a ticket.

Respondent concedes the power of the superior court to grant defendant's motion under the facts of this case, but states that there was no abuse of discretion in denying the same. It is true, of course, that if there is a substantial conflict in the facts presented by the affidavits the determination of the controverted facts by the trial court will not be disturbed; but from the foregoing allegations, and from other matters appearing in the record, it is apparent that there is no such condition existing here. The defendant has made positive allegations in her affidavit, showing that plaintiff committed a fraud upon the court and upon the defendant. The plaintiff has introduced nothing to controvert this. His affidavit is evasive and insincere on its face, and it is obvious from the entire record that he knew the residence of defendant and planned to have notice mailed to her at an address which was never her address during the married life of the parties. This is extrinsic fraud—fraud on the defendant, which prevented her from having her day in court and which, according to her affidavit, has deprived her of the savings of a lifetime, and it was also a fraud upon the court.

Nor does the record show a lack of diligence on the part of the defendant. Defendant alleged that her eastern attorneys received a report from counsel in California on October 24, 1924, and that two or three weeks elapsed before they could communicate with her. The notice of motion to set aside the decree was filed on April 28, 1925, six months later. This is not such an unreasonable time under all the circumstances. Defendant was across the continent and claims that she was hampered not only by distance, but by lack of funds. Her action, under the circumstances, was within a reasonable time. Furthermore, the law does not favor default judgments in divorce actions and courts are always alert to detect and correct fraud.

The limitation of time prescribed by section 473 of the Code of Civil Procedure is applicable here. In the case of *McGuinness* v. *Superior Court*, 196 Cal. 222 [40 A. L. R.

1110, 237 Pac. 42], it was held that a trial court has inherent power to set aside a judgment obtained through a fraud committed upon it, and its right so to do is not derived from section 473 of the Code of Civil Procedure, nor limited to the time therein specified.

Respondent urges that defendant has a remedy in a new equitable proceeding to set aside this judgment on the ground of fraud, and with this we agree, but it seems useless to subject her to the delay and expense of another action when relief could and should be given herein, and we have concluded, therefore, that the order appealed from should be reversed. It is so ordered.

Richards, J., and Shenk, J., concurred.