[S. F. No. 17042.   In Bank.   Feb. 1, 1946.]

ANNA RIVIECCIO, Respondent, v. EDNA BOTHAN, Appellant.

Lemuel Dalton Sanderson for Appellant.

Leon Prescott and Charles Bagby for Respondent.

TRAYNOR, J.—Giovanni Rivieccio died on December 23, 1940, in Oakland from injuries received in an accident while driving a truck of his employer. Plaintiff contends that she is his widow and in this action for declaratory relief prays that a final decree of divorce entered in his favor by the Superior Court of San Francisco be set aside.

The decedent married plaintiff in Quincy, Massachusetts, on August 6, 1924. They lived together, first in Quincy and later in Italy. In March, 1928, plaintiff returned to Quincy with the consent of her husband. He stayed in Italy because he did not have a permit to reenter the United States. It was agreed, however, that he would join her as soon as possible.

He went from Italy to Australia and, between 1928 and 1935, worked as a steward on ships operating between Sidney and San Francisco. At Sidney he met defendant and became the father of a child born to her in 1930. On December 19, 1932, he filed an action for divorce against plaintiff in the Superior Court of San Francisco. Summons was served by publication and mail, based on Rivieccio's affidavit that "the last known place of residence of defendant was and is Hancock and Water Streets, Quincy, Massachusetts." On the date that the order for publication was made, Rivieccio's attorney mailed a copy of the summons and complaint to "Anna Zaccordelli Rivieccio . . . at Hancock and Water Streets, Quincy, Massachusetts." Rivieccio also stated in his affidavit that he believed he had a good cause of action and incorporated his verified complaint in his affidavit. The complaint alleged: "That plaintiff and defendant separated from each other on or about the 14th day of May, 1927, when she deserted him. . . . That heretofore, towit, more than one year last past immediately prior to the commencement of this action, defendant wilfully deserted and abandoned plaintiff, by voluntarily separating herself from plaintiff with the intention of deserting and abandoning him, against his will and consent. That said desertion now continues and has uninterruptedly continued for more than one year last past immediately prior to the commencement of this action against his will and consent." There was no appearance on behalf of the wife, and on April 5, 1933, Rivieccio was granted an interlocutory decree. The final decree was entered on April 10, 1934. On September 17, 1934, Rivieccio married defendant in Australia, and two months later he there adopted the child born before the marriage. Shortly thereafter they all came to San Francisco where they lived together until decedent's death. The trial court annulled the divorce decree and declared that plaintiff is the surviving widow of Giovanni Rivieccio. Defendant appeals.

The trial court found: "That the affidavit for publication of summons filed by Giovanni Rivieccio . . . was a fraud upon this plaintiff and upon the said Superior Court, and that the Decree of Divorce . . . was obtained by means of fraud on said Court and upon the plaintiff. . . . That plaintiff herein never deserted decedent and that the allegation in said complaint for divorce that plaintiff herein has deserted decedent on or about May 14, 1927 . . . is not true, and was and is

wholly and wilfully false, and was known to decedent to be false and fraudulent when made by him. That said allegation of desertion . . . is wholly inconsistent with the various letters written by decedent to plaintiff from December, 1928, to September 30, 1930. . . . That Hancock -and Water Streets in the City of Quincy, Massachusetts, are public thoroughfares and do not intersect; that plaintiff herein never lived on either of said streets, and that both of said streets are located at considerable distance from where plaintiff resided in said city. That said city of Quincy, at the time plaintiff herein and decedent resided therein as husband and wife, had a population of approximately 44,000; that decedent had lived in, around and about said city for a considerable period of time and was familiar with the streets and thoroughfares thereof. That at divers times after plaintiff herein returned to said Quincy, and at the time of the filing of decedent's complaint and affidavit for divorce and at the time of the entry of the Interlocutory and Final Decrees of Divorce, and for a considerable time thereafter, plaintiff and decedent were in written communication with each other, and that decedent knew where plaintiff resided and that decedent never addressed plaintiff at Hancock and Water Streets, Quincy, Massachusetts, and plaintiff never received any correspondence from any person addressed to her at Hancock and Water, or Hancock and Water Streets, Quincy, Massachusetts.''

■ Defendant contends that the finding of extrinsic fraud, requisite to warrant an attack in equity on a final judgment, was not supported by the evidence. In the light of the facts that Rivieccio was familiar with the streets of Quincy, Massachusetts, that he knew where plaintiff resided, and that until September, 1930, he addressed his letters in such a manner that they reached her, the trial court was justified in finding that he gave the fictitious address with the fraudulent intent of withholding from plaintiff notice of the divorce proceedings. ■ It is settled that a wilful misstatement of the defendant's address in an affidavit for publication of summons is extrinsic fraud and justifies setting aside the judgment resulting from proceedings of which defendant did not have notice. (*Aldrich* v. *Aldrich,* 203 Cal. 433, 437 [264 P. 754] ; *Stern* v. *Judson,* 163 Cal. 726, 735 [127 P. 38] ; *Doyle* v. *Hampton,* 159 Cal. 729, 733 [116 P. 39] ; *Parsons* v. *Weis,* 144 Cal. 410, 419 [77 P. 1007] ; *Dunlap* v. *Steere,* 92 Cal.

344, 347 [28 P. 563, 27 Am.St.Rep. 143, 16 L.R.A. 361];
*Wells* v. *Zenz*, 83 Cal.App. 137, 142 [256 P. 484]; *Williams* v.
*Williams*, 57 Cal.App. 36 [206 P. 650].)

◼ Defendant contends that a suit in equity to set aside
a divorce decree cannot be maintained after the death of one
spouse unless it appears that the divorce decree or the sub-
sequent action to set it aside involved some property right
in which the surviving spouse is beneficially interested. A
court, however, has authority to purge its own records and
may set aside a judgment at any time when it appears that
the court has been imposed upon by extrinsically fraudulent
acts. (*McGuinness* v. *Superior Court,* 196 Cal. 222, 234 [237
P. 42, 40 A.L.R. 1110]; *Tomb* v. *Tomb,* 120 Cal.App. 438,
442 [7 P.2d 1104]; *Britton* v. *Bryson,* 216 Cal. 362, 369 [14
P.2d 502]; *Aldrich* v. *Aldrich, supra,* 437.) The court's power
in this respect is not dependent on whether property rights
are involved. (See *Tomb* v. *Tomb, supra* at p. 442.) More-
over, a property interest is involved in this proceeding. Plain-
tiff's allegation that decedent was killed as the result of an
accident arising out of and in the course of his employment
is admitted by defendant. Claims for a death benefit may
therefore be made under the Workmen's Compensation Act,
and in making its award the Industrial Accident Commission
will take into consideration the marital relationship of the
decedent to each of the parties herein.

◼ Defendant also contends that plaintiff was not dili-
gent in discovering the fraud and that since the interests of
defendant and her child have intervened, plaintiff should
be barred from attacking the divorce decree. The existence
of laches is determined by the trial court in the light of the
facts and circumstances of the particular case. (*Austin* v.
*Hallmark Oil Co.,* 21 Cal.2d 718, 734 [134 P.2d 777]; *Fry*
v. *Board of Education,* 17 Cal.2d 753, 761 [112 P.2d 229].)
The trial court in the present case found that "plaintiff herein
is not, nor has she been, guilty of laches or any lack of dili-
gence in instituting the above entitled action." The record
discloses ample evidence to support this finding. Plaintiff
testified that before and after the divorce proceedings her
husband lulled her into the belief that he was still a devoted
husband, and that she later lost trace of him but constantly
made inquiries of relatives and friends as to his whereabouts.
She continued to write to her husband at the address known

to her in Australia and one known to her in San Francisco, but received no response to her letters. She was separated by many miles from San Francisco and was in ill health from 1931 until 1937. (See *Aldrich* v. *Aldrich*, 203 Cal. 433, 437 [264 P. 754].)

The judgment annulling the divorce decree will not make defendant's child illegitimate, nor will it necessarily entail for defendant the hardships that she envisages. The child will not be deprived of the status of a legitimate child of the decedent. Under section 85 of the Civil Code "The issue of a marriage which is void . . . is legitimate" while under section 215 of that code "A child born before wedlock becomes legitimate by the subsequent marriage of its parents." Such statutes "remove the stain and disabilities of bastardy" (*Goodman* v. *Goodman*, 150 Va. 42, 45 [142 S.E. 412]) not only from children born after the void marriage of their parents or before their valid marriage, but also from children born, as defendant's child, before the invalid marriage of their parents. (*Bates* v. *Meade*, 174 Ky. 545 [192 S.W. 666]; *Goodman* v. *Goodman, supra*; *Clinton County Natl. Bk. & Tr. Co.* v. *Todhunter*, 43 Ohio App. 289 [183 N.E. 88]; see *Carroll* v. *Carroll*, 20 Tex. 731, 732, 746; 84 A.L.R. 499; 6 So.Cal. L.Rev. 338.) The rights of defendant's child include any rights that a legitimate child has in a death benefit that may be granted to decedent's dependents under the Workmen's Compensation Law. (Lab. Code, §§ 4703, 3501.)

Since the present proceeding will not affect the child's status, it follows that the child is not an indispensable party. (See *Bank of California* v. *Superior Court*, 16 Cal.2d 516, 521 [106 P.2d 879].)

Defendant's right to share in a death benefit under the Workmen's Compensation Law does not depend on the validity of her marriage. Defendant will be entitled to compensation should the Industrial Accident Commission determine that she was dependent for her support upon decedent and in good faith lived in his household as his wife. (*MacArthur* v. *Industrial Acc. Com.*, 220 Cal. 142 [29 P.2d 846]; *Harlan* v. *Industrial Acc. Com.*, 194 Cal. 352, 364 [228 P. 654]; *Moore Shipbuilding Corp.* v. *Industrial Acc. Com.*, 185 Cal. 200, 205 [196 P. 257, 13 A.L.R. 676]; *Temescal Rock Co.* v. *Industrial Acc. Com.*, 180 Cal. 637 [182 P. 447, 13 A.L.R. 683]; *DeFreece* v. *Industrial Acc. Com.*, 26 Cal.App. 2d 584, 587 [80 P.2d 129]; *Louden* v. *Industrial Acc. Com.*,

105 Cal.App. 65, 69 [286 P. 1045].) "The dependency of the claimant is the true basis of his right to recover compensation rather than blood or marriage. Relationship is really only evidence of dependency." (*Harlan* v. *Industrial Acc. Com., supra,* at p. 364.) Similarly, in passing upon any claim that plaintiff may make for compensation and in determining under section 4704 of the Labor Code whether to assign any part of its award to any one or more of the dependents in accordance with their respective needs, the Industrial Accident commission may consider the fact that plaintiff lived separately from her husband and was not supported by him for a period exceeding twelve years.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.