## CHUBB v. CHUBB.

1. DIVORCE—APPEAL—FINDINGS OF TRIAL COURT.

While the Supreme Court is not restricted by the findings of the circuit court, a divorce case on appeal being heard *de novo*, especial consideration is given to such findings, so largely based upon the credibility of the witnesses, and they will not be reversed unless the Supreme Court is convinced that it must have reached a different conclusion had it occupied the position of the lower court, under like circumstances.

2. SAME—EXTREME CRUELTY—EVIDENCE.

In suit for divorce, finding of trial court that defendant husband was subjected to assaults sufficient to entitle him to divorce

on his cross bill therefor *held*, supported by the overwhelming weight of the evidence.

3. SAME—DIVISION OF PROPERTY.

In suit for divorce wherein it is shown that defendant, now 60 years of age, has a net worth of $26,000, an income of approximately $6,000 a year, that marriage with plaintiff lasted only 3 years, during which defendant gave her $2,000 a year, that he supported her and her daughter in a manner better than they had enjoyed prior to the marriage, that plaintiff was responsible for the rupture of the marriage, that she had not assisted him in his work or in the building up of his present estate, an award to her of $1,500 in lieu of dower and property rights, rights of maintenance, and statutory allowances for homestead and support is affirmed in view of the fact that defendant's earning power will probably not long continue.

4. SAME—COSTS ON APPEAL.

Attorney fee of $150 is allowed plaintiff wife on appeal in suit for divorce where appeal was taken by plaintiff and counsel in good faith, both on the question of award of divorce and allowance and division of property rights, divorce had been given defendant on cross bill, and award amounted to only $1,500 (Court Rule No. 5 [1933]).

5. SAME—COSTS—BRIEF AND RECORD.

Only one-half of cost of printing brief and record is allowed appellant wife upon affirmance of decree of divorce on husband's cross bill where both brief and record were excessively long and prolix.

Appeal from Berrien; Evans (Fremont), J. Submitted January 17, 1941. (Docket No. 3, Calendar No. 40,442.) Decided May 21, 1941.

Bill by Hazel Chubb against James M. Chubb for divorce on ground of extreme cruelty. Cross bill by defendant for divorce on ground of extreme cruelty. Decree for defendant. Plaintiff appeals. Affirmed.

*White & White,* for plaintiff.

*Casper R. Grathwohl* and *Edwin J. Donahue,* for defendant.

McALLISTER, J.   Plaintiff filed her bill for divorce asking alimony and division of property interests. Defendant filed cross bill asking that a decree of divorce be granted to him.   The trial court dismissed plaintiff's bill, awarded defendant a decree of divorce, and allowed plaintiff the sum of $1,500 in lieu of all dower and property rights and rights of support and maintenance.   Plaintiff appealed, and defendant filed a cross appeal.

The printed record of approximately 400 pages is largely a mass of contradictory testimony of the parties themselves.   Each charged the other with outbursts of temper, vindictiveness, profanity, and physical assaults.

At the time of their marriage, defendant was 57 years of age and plaintiff was 32.   Each had been previously married.   Plaintiff had a daughter, aged 10, and defendant had a son 21 years old.   Much of the trouble apparently started over the fact that defendant's son lived with the parties.   Plaintiff accused him of not paying her the proper respect, and ordered him out of the house.   Defendant remonstrated, and recalled that it had been agreed before their marriage that his son was to live with them.   Defendant had been a good father to his son, who had lost his mother by death when he was a small child, and there seems to have been no reasonable grounds for plaintiff's attitude with regard to the boy.   Finally, the son said that, if he had a short time to make arrangements, he would leave—which he did.   Plaintiff's daughter continued to live in the home of the parties, and the evidence showed that defendant was unusually kind to her and solicitous about her welfare and school activities.

In her claims that she was subjected to abuse and physical violence, plaintiff is unsupported by any direct evidence of her witnesses. Her mother testified that, when plaintiff made a certain visit to her, she exhibited marks on her body which she said were the result of having been beaten by defendant. A physician also testified as to having examined plaintiff, during the period the parties were living together, and having found that she had a laceration on her forehead and contusions on the left side of her face, her left arm, and her left thigh. Plaintiff claims this was a result of violence inflicted upon her by defendant. Defendant gives as an explanation of these bruises that he had been engaged in woodworking in his basement, making some small swing doors to go on the kitchen sink at his farm; that plaintiff, in one of her spells of pugnacity, ran down into the basement and grasped the frames for the panels of the doors, upon which defendant was working, and after striking him with the frames and biting his arm, she tried, in her vindictiveness, to push the panels through the furnace door in order to destroy them; that defendant, in trying to rescue the panels, shoved her to one side, and that as a result thereof she fell against the workbench and suffered these bruises, which were really of no consequence. In addition to the foregoing testimony, on her behalf there was introduced the evidence of plaintiff's sister and brother-in-law, who testified that, although the parties seemed to be very happy at first, defendant began to speak less and less to his wife in their company and finally ignored her entirely.

Defendant's testimony that he was often assaulted by plaintiff is supported by numerous, apparently disinterested witnesses who testified that they saw plaintiff strike defendant, tear at his hair, and bite

his arm, through the windows of the home where the parties were living. Photographs were introduced in evidence on the part of plaintiff for the purpose of showing that such witnesses could not have seen these incidents through the window from the place where they said they were viewing them. Upon careful examination, these photographs are not persuasive as affecting the credibility of such witnesses.

Much testimony was introduced that plaintiff had told various persons, including delivery men, neighbors, and many members of the community, that defendant was too old for her, and was no good as a man, and that she married him for what she could get out of him. There was also considerable testimony that plaintiff referred to defendant by other derogatory, profane, and abusive terms.

Defendant's son testified that at one time when he and his girl friend and his father were at defendant's farm, plaintiff came out and said to them: "You and your father would like it if I named your girl friend as a co-respondent in my divorce suit." Plaintiff admitted on cross-examination that what she said to them was that the girl "would feel very foolish if I ever named her." There appears no reason whatever for such a threat, or any grounds upon which any intimation of improper conduct on the part of the girl could be substantiated; and one must conclude that it was a vicious, insulting, and vindictive threat, calculated to anger and humiliate all of the parties toward whom it was directed.

Plaintiff made frequent efforts to have defendant execute conveyances, change insurance policies and bank accounts, with the design of receiving all of the defendant's property at his death, to the exclusion of his son. As previously remarked, plaintiff was supported by no witnesses who testified to any

of the many and repeated assaults which she claims defendant made upon her. It seems significant that the one person who could substantiate the claims, made by plaintiff, was her daughter, who was living with the parties during this whole period, but who was never called as a witness.

The trial court, in its opinion, said:

"The evidence is overwhelming, coming from various storekeepers, a milk delivery man, and others in the vicinity, that plaintiff had frequently indulged in profanity and violent language and had frequently called and at other times referred to defendant in vicious, vile and insulting terms. The evidence establishes that plaintiff had a mania for telling her troubles, real or imaginary, to anyone who would listen and then complained because, as she expressed it, the people of the city or at least of her community were all so against her that she suggested to defendant that they move elsewhere."

While we are not restricted by the findings of the circuit court, a divorce case on appeal being heard *de novo,* especial consideration is given to such findings, so largely based upon the credibility of the witnesses, and the reviewing court ought not to reverse the determination of the trial court in such a case, unless convinced that it must have reached a different conclusion had it occupied the position of the lower court, under like circumstances. *Brookhouse* v. *Brookhouse,* 286 Mich. 151; *Stratmann* v. *Stratmann,* 287 Mich. 94; *Westgate* v. *Westgate,* 291 Mich. 18.

Plaintiff's counsel contends that, because defendant was a strong, healthy man and plaintiff was a frail woman, it was absurd and unreasonable for the trial court to find that plaintiff was guilty of the assaults upon defendant as claimed by him. If the facts were as the trial court concluded, it can be

said that it is not the first time in the history of human relations that a smaller and weaker person has wreaked a tyrannous, vituperative, vengeful, and cruel course of conduct upon a spouse with the impunity from a retaliation of violence that civilization may be said to prescribe in such situations. Upon a review of the testimony, we are of the opinion that the overwhelming weight of the evidence justified the award of a decree of divorce to defendant.

Plaintiff was allowed $1,500 in lieu of dower and property rights, rights of maintenance, and statutory allowances for homestead and support. It is contended that this is not a fair and equitable allowance.

Defendant is 60 years of age, has a salary of approximately $4,000 a year, a total income of approximately $6,000 a year, and a net worth of about $26,000. Plaintiff did not, in any way, assist defendant in his work or in the building up of his present estate. The parties lived together only three years. Plaintiff received $2,000 a year from defendant during this period, out of which came certain operating expenses of the house. During this time defendant supported plaintiff and her daughter in a substantial way, clothed the mother and daughter in a manner better than they had been, before plaintiff's marriage to defendant, and paid certain accounts for insurance upon the life of plaintiff and of her daughter. The earning power of defendant, as found by the trial court, and with which we are in accord, has not the probability of being long continued because of his advancing years. It must be remembered that plaintiff was to blame for the rupture of the marriage and is not entitled to the consideration that would be extended if the fault had been that of defendant. Under the

circumstances as revealed in this case, we affirm the disposition of the property rights as determined by the trial court; and we find no reason to disturb the allowance made for costs and counsel fees to plaintiff's attorneys.

It appears that the appeal was taken by plaintiff and counsel in good faith, both on the question of the award of divorce and the allowance and division of property rights. In view of the amount of money awarded to plaintiff in lieu of rights of support, maintenance, and property rights, we do not feel that such allowance should be diminished by the payment of the necessary expenses and costs of a bona fide appeal. The record is approximately 400 pages in length; plaintiff's counsel was assiduous in his presentation of her case in her behalf on appeal, and prepared an extensive brief on the law and facts. We are of the opinion that there should be an allowance of $150 to plaintiff's counsel as attorney fees on appeal in lieu of the fee provided by rule,* to be paid by defendant.

With regard to costs for the printing of plaintiff's brief and the record, both were excessively long and prolix, and while, if such were not the case, we would feel that plaintiff would be entitled to tax costs therefor, under the circumstances she will be allowed to tax only one-half of such costs.

The decree of the trial court is affirmed.

Sharpe, C. J., and Bushnell, Boyles, Chandler, North, and Butzel, JJ., concurred with McAllister, J.

Wiest, J. (*for modification*). The appeal was without merit. The divorce decree in the circuit court should be affirmed without any allowance of attorney fee or costs to plaintiff.

---

* See Court Rule No. 5 (1933).—Reporter.