ETHRIDGE v. ETHRIDGE.

1. Appeal and Error—Divorce—De Novo Review.
  While the Supreme Court is not restricted by the findings of the circuit court, a divorce case on appeal being heard *de novo*, especial consideration is given to such findings so largely based on the credibility of witnesses and reversal will not be made unless Supreme Court is convinced it must have reached a different conclusion had it occupied the position of the lower court, under like circumstances.

2. Divorce—Extreme Cruelty—Evidence—Division of Property.
  In suit for divorce wherein parties were past middle age at time of marriage and each had been previously married, evidence supported decree for plaintiff husband on ground of extreme cruelty and justice of division of property leaving each with what he or she had at time of marriage and awarding defendant some household goods and property acquired by plaintiff during the marriage.

Appeal from Genesee; Elliott (Philip), J. Submitted October 13, 1948. (Docket No. 41, Calendar No. 44,193.) Decided November 12, 1948.

Bill by Walter Ethridge against Beulah Ethridge for divorce on grounds of extreme and repeated cruelty. Cross bill by defendant against plaintiff

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am. Jur., Appeal and Error, § 897.

for divorce for extreme and repeated cruelty. Decree for plaintiff. Defendant appeals. Affirmed.

*Walter C. Jones* and *Maurine L. Jones,* for plaintiff.

*Sherman M. Bean,* for defendant.

Boyles, J. These parties were married in April and separated in November, 1947, at which time plaintiff filed the bill for divorce in this case alleging extreme and repeated cruelty. The defendant answered denying the allegations and filed a cross bill making charges of extreme cruelty against the plaintiff. Both parties asked for a divorce. The plaintiff asked for a return of the property he had turned over to the defendant, and the defendant (cross-plaintiff) asked for a division of said property. Issue having been joined, the case was heard on testimony taken in open court. At the conclusion the circuit judge granted plaintiff a divorce and entered a decree dividing their property in such a manner as to leave each with the same property he or she had at the time of the marriage, except as to some household goods and property acquired by plaintiff during the marriage which the court allowed to the defendant. The defendant (cross-plaintiff) appeals.

The essential question for determination is whether either party proved sufficient grounds for divorce and, if so, which one. The defendant (cross-plaintiff) on the appeal claims that she and not the plaintiff proved grounds for divorce, that the court interfered with her counsel at the trial, and considered matters not received in evidence.

Both of these parties were past middle age at the time of marriage, had been previously married, the plaintiff had two grown-up children by his former wife who had died in September, 1946. The defend-

ant had two sons by a former marriage, aged 21 and 17 years respectively. The record indicates that during their short courtship in the winter of 1947 the defendant was somewhat the aggressor. Plaintiff was a shopworker who testified he could not read or write. He had accumulated some property. He testified:

"My kids said not to go with her, she was in the family (Apparently she was his deceased wife's sister). * * * She said, 'Well, are you going to let your kids stand in the way of your future?' I said, 'I don't know.' She said, 'I have got this house down there, I don't owe nothing on it, I have got a bank account, what you have got, what I have got, we can put it together and make a go of it.' "

At the time of their marriage the plaintiff owned a home in Flint, a land contract on another house, a 20-acre farm in Missouri, a $2,000 life insurance policy, an automobile and household furniture, and had $1,500 in the bank. Shortly after their marriage he transferred his real estate into tenancy by the entireties with the defendant, made his life insurance payable to her, and changed his bank account and his automobile into joint ownership with her. According to the record the defendant (cross-plaintiff) failed to come up to his expectation with "what you got, and what I got, we can put them together." She transferred nothing to him.

They were both employed. She brought her two big sons to live with them. They had good appetites and the plaintiff provided for them. The boys did not work steadily and contributed nothing. The defendant was drawing $48.30 a week, none of which was used in the maintenance of the home. Plaintiff testified, "I never seen a dime of her money no time." He also testified:

"We sent all the laundry out. I paid for all it; she sent all the laundry for both of her boys and herself and all of it. I paid for all of it. * * * I asked her, she said I never take none of my money, that is what I married you for, to make my living, I never spend any of my money on the place, that is what I married you for.

"*Q.* When did she say that?

"*A.* She told me that many different times."

Another young man was brought into the home by the defendant and stayed about three months while working part of the time. Plaintiff testified that this boy paid no board during that time. He complained about scenes where the defendant and this young man hugged and kissed each other. He says that when he complained she threatened to kill him and called him some nasty names. While defendant helped to get the meals, she neglected the other housework. He paid for someone to come in once a week "to clean the house, do all of the work." Soon after they were married she told him:

"Your kids can't come in my home, I won't allow them."

He testified he had lost 40 pounds in weight during their marriage, that he had difficulty getting enough to eat. He said:

"I would go to take stuff on the plate, take stuff to eat. She would hit the table with her fist, and said, 'You remember I have got two boys to eat out of that yet.' * * *

"*Q.* How many quarts of milk did you have a day?

"*A.* Took two quarts a day. I was not allowed to drink a drop of milk. She said,—I would go to drink any milk, she said, 'Remember, I have got two boys have got to have milk. You drink something else.'"

On the defendant's side of the story, she testified that he made indecent proposals to her in regard to

sex relations. It also appears that at one time he
was arrested on her complaint for an assault. She
denied that she ever called the plaintiff names and
testified to some bad names she claimed that he called
her. However, it is apparent from a reading of the
record that there were instances where she either
evaded or avoided telling the truth, particularly
where the truth would appear bad for her side of the
controversy. The trial court patiently heard both
of them, had an opportunity to observe their appear-
ance and their demeanor in testifying and to draw
conclusions as to the weight to be given their testi-
mony. The circuit judge expressed his conclusion
as to their credibility in an opinion as follows:

"Now, Mr. Ethridge was on the stand; his manner
on the stand was that of one who was sincere, but
bullheaded I would say, and very ignorant. He gave
the appearance of what you would call a dummy, but
no indicia, as far as his manner was concerned, of
falsehood. Mrs. Ethridge takes the stand, and even
when I questioned her about something she did not
answer the question, but endeavored to explain to
me why things were as she said they were, and that
is one indicia of falsehood, instead of answering a
question fairly."

This Court has recently commented upon situa-
tions where it appears from the record that both
parties cannot be telling the truth. While this Court
merely reads the testimony in a printed record, the
trial judge has a greater opportunity to form conclu-
sions as to the credibility of testimony, as it is being
adduced by the witnesses.

"While we are not restricted by the findings of the
circuit court, a divorce case on appeal being heard
*de novo,* especial consideration is given to such find-
ings, so largely based upon the credibility of the
witnesses, and the reviewing court ought not to re-
verse the determination of the trial court in such a

case, unless convinced that it must have reached a different conclusion had it occupied the position of the lower court, under like circumstances." *Chubb* v. *Chubb,* 297 Mich. 501.

"In denying a motion for a new trial the circuit judge expressed himself as satisfied that appellee had testified truthfully on the witness stand and that appellant had not done so. The determination of a controversy of this character rests largely on the credibility of the witnesses, including the parties themselves. The trial court in the instant case had an opportunity to observe the parties, as well as the other witnesses, note their demeanor in testifying, and draw conclusions as to the weight to be given the testimony of each. On the record before us we do not think that the conclusions reached should be disturbed." *Bohlka* v. *Bohlka,* 318 Mich. 468.

The following comment in the opinion of this Court in *Billingsley* v. *Billingsley,* 315 Mich. 417, at page 420, is particularly applicable to the instant situation:

"It is clear that the differences between these parties are irreconcilable and that they cannot live together harmoniously. On *de novo* review the question before us is whether or not plaintiff established acts of extreme and repeated cruelty entitling him to a divorce. The testimony was conflicting, and the trial court, who saw and heard the parties and their witnesses, was better able to determine their credibility and the weight to be given their testimony."

The trial court, in an opinion reviewing the testimony in the case at length, pointed out the instances where he considered the testimony of the defendant contradictory, and not credible or worthy of belief. We find that the record amply supports the conclusion of the circuit judge in granting plaintiff a decree of divorce. The questions asked by the circuit judge

during the trial were plainly for the purpose of bringing out all of the facts, and were not an unwarranted interference with counsel in the conduct of the trial. There was no jury to be influenced by answers elicited by questions asked by the court. Nor is our conclusion based upon a consideration of any extraneous matters not received in evidence. On our review of the record *de novo* we are satisfied with the justice of the division of the property as decreed.

The decree is affirmed, with costs to appellee.

BUSHNELL, C. J., and SHARPE, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.