POTTER *v.* POTTER.

DIVORCE—CUSTODY OF CHILD—BEST INTERESTS OF CHILD.
> Custody of child of divorced parents, which had been awarded finally to father with physical custody reposed in maternal grandmother, and allowing mother the right of visitation with the child for 6 weeks each summer in California, is continued for the present, not disturbing order of trial court that best interests of child would be best served by remaining where she is, on nonresident mother's appeal.

KAVANAGH, C. J., and SMITH, J., dissenting.

Appeal from Wayne; Bowles (George E.), J. Submitted December 5, 1963. (Calendar No. 119, Docket No. 50,169.) Decided April 6, 1964.

Bill by Sandra Potter against Donald Potter for divorce on grounds of extreme and repeated cruelty. Decree granted to defendant on cross bill. From denial of petition to modify decree in respect to child custody, plaintiff appeals. Affirmed.

*Goodman, Crockett, Eden, Robb & Philo (George W. Crockett, Jr.,* of counsel), for plaintiff.

*John A. Barr* and *John T. Harris,* for defendant.

DETHMERS, J. Because the opinion in this case, written and served upon the other Justices by the then Chief Justice, LELAND W. CARR, on December 12, 1963, could not, for lack of unanimous consent, be

---

REFERENCES FOR POINTS IN HEADNOTE
17A Am Jur, Divorce and Separation §§ 818, 839.

disposed of before the expiration of his term on this Court on December 31, 1963, I resubmit it for Court consideration. It reads as follows:

"CARR, C. J.  This case involves the custody of a young child, less than 5 years of age at the present time.  Her parents, the parties to this case, were married August 2, 1958, and lived and cohabited together until December 7, 1960.  On December 13th of said year plaintiff filed a bill of complaint seeking an absolute divorce from defendant, together with custody of the child, temporary alimony, and attorney fees.  Process was served on defendant, but, due to his failure to appear and answer, default was taken on March 30, 1961.  On June 7th following, by order of the court based on stipulation of the parties, the default was set aside and defendant was granted leave to file an answer and cross bill.  Such pleadings were entered in the case.

"In the bill of complaint plaintiff charged defendant with acts of cruelty based in the main on an alleged indifferent attitude toward her.  Defendant by his answer denied plaintiff's allegations with reference to her grounds for divorce, and in his cross bill asserted that she had made baseless accusations against him with reference to his conduct with other women, and that she had been guilty of conduct with another man, referred to as 'Mr. X,' that was subversive of the marital relation.  He also alleged that on numerous occasions prior to her institution of suit for divorce she had threatened to bring such action, that she absented herself from the home improperly, that before instituting the divorce action she advised defendant that she and 'Mr. X' were intending to be married following the entry of a decree of divorce, and that she and 'Mr. X' were planning on moving to the State of California. Defendant asked for a decree of divorce with equi-

table division of the property of the parties, and the custody of the child, Donna Potter.

"The answer and cross bill were filed on June 9, 1961. Under date of July 3d following, by stipulation and order, said pleadings were withdrawn. On the same day proofs were taken on plaintiff's non-contested bill of complaint. A decree was granted on the basis of the testimony submitted, and was signed and filed on the day of hearing. The decree granted to plaintiff the divorce sought by her, adjusted the property rights of the parties, and awarded to plaintiff the custody of the child subject to the conditions that she should not be removed from the State of Michigan and that the defendant should have reasonable rights of visitation.

"The record discloses that on the same day that the decree was granted to her plaintiff left Michigan for California, taking Donna with her, and 9 days later, July 12, 1961, she and 'Mr. X' were married. It further appears that 'Mr. X' had preceded her to California and was there carrying on his profession as a surgeon. It further appears that he had been divorced from his first wife shortly before plaintiff started her suit in the circuit court of Wayne county. A son of that prior marriage, it appears, is now in the custody of his mother.

"On August 14, 1961, defendant Potter filed a motion to set aside the stipulation for the withdrawal of his answer and cross bill of complaint in the divorce case, to reinstate said pleadings, and to set aside the decree of divorce that had been entered. Notice thereof was duly served on plaintiff and cross-defendant, who filed objections to the petition. Defendant's motion asserted that the stipulation for the withdrawal of the answer and cross bill previously filed was executed by him in reliance on representations of the plaintiff and cross-defendant that she had terminated her association with 'Mr.

X', that she would remain in the State of Michigan with the child of the parties, and that cross-plaintiff could see such child and be with her any time that he desired.

"As before noted, the decree granted to plaintiff following the hearing on her bill of complaint specified that the child should remain within the State of Michigan. Plaintiff's conduct indicated clearly that she did not at any time intend to comply with such requirement. At the hearing on her subsequent petition to modify the decree, finally granted to defendant and cross-plaintiff, with reference to the custody of the child, she admitted that she had made the representations to her then husband that he set forth in his petition of August 14, 1961. She did not seek to explain her conduct in that regard by claiming that at the time she made the statements she intended to conduct herself in accordance therewith, but, rather, asserted that she was in fear of the defendant and therefore gave him the assurances that she knew he desired. It must be said, however, that her conduct as disclosed by the record does not indicate that at any time she feared, or had reason to fear, injury to herself or to Donna at the hands of defendant and cross-plaintiff.

"The motion made by defendant and cross-plaintiff was granted on September 14, 1961, and the answer and cross bill were reinstated. No appeal from such order was made or attempted, although it appears that notice thereof was duly served on plaintiff and cross-defendant. Shortly thereafter a motion was made by cross-plaintiff for an order requiring cross-defendant to return Donna to the jurisdiction of the court. Service thereof was duly made on cross-defendant's attorney. Apparently determination with reference to said motion was held in abeyance pending a hearing on the cross bill of complaint of Donald Potter seeking an absolute decree of divorce

and the custody of the child in question. At said hearing, which was held on January 22, 1962, cross-defendant did not appear in person. Her attorney was present, and the following occurred:

" '*Mr. Roxborough:* I desire to make a statement, Your Honor. I happen to represent the defendant and my client is in California and she is not here and not coming back for the case and she desires to let her husband proceed to take his divorce on his cross bill.

" '*The Court:* Go ahead.

" '*Mr. Barr:* Is she aware of this proceeding?

" '*Mr. Roxborough:* I have informed her that the matter is up for today. I think there is nothing more Your Honor desires of me.

" '*The Court:* I would leave that up to you. She does have notice through you of this proceeding today?

" '*Mr. Roxborough:* Yes.'

"On the hearing that followed proofs were offered in support of the averments of the cross bill. The testimony of apparently disinterested witnesses indicated plaintiff's conduct with 'Mr. X', whom she subsequently married in California, was highly improper and that the association between said parties was observed by people living in the neighborhood, including the witnesses who testified to specific acts that they had observed. On the basis of the proofs the trial judge concluded that cross-plaintiff was entitled to the relief sought by him, and accordingly he was granted an absolute divorce. It was the opinion of the judge, however, that the matter of the custody of the child should, if possible, be given further consideration and should be determined on a full hearing. The decree entered accordingly contained a provision directing that the cross-defendant should return with the child to the jurisdiction of the State of Michigan, and should submit herself to the

office of the friend of the court of Wayne county for examination and investigation, to the end that the court might be fully advised with reference to the facts relating to the matter of custody. It was further specified that in the event that cross-defendant should neglect or refuse to return to Michigan with the child within a period of 60 days from the date of the decree, which was entered February 2, 1962, the custody should be given to the cross-plaintiff without further order being required therefor.

"It appears from the record that copy of this decree was duly served on cross-defendant, but she did not comply with the provision with reference to the return of herself and the child. No appeal from the decree entered was taken but under date of May 21, 1962, cross-defendant filed a petition for modification thereof, asserting in substance that custody of Donna should be awarded to her. Answer to said petition was duly filed, to which cross-defendant replied. In her behalf objections to the recommendation of the friend of the court that custody be given to the father were also submitted. It should be noted in this connection that following the entry and service of copy of the decree of divorce granted on February 2, 1962, and the noncompliance with the direction therein contained with reference to cross-defendant's return to Michigan with the child, defendant and cross-plaintiff went to California, took possession of the child, and returned her to the home of his parents in Ohio. The trial judge, learning of this procedure, directed that the child be brought to Michigan and placed in the home of the maternal grandparents who were residents of Wayne county. This direction was followed and on May 25, 1962, the child was placed in the custody of the mother of the plaintiff and cross-defendant, where she had since remained. That such home is a suitable and proper one for the upbringing of a young child is

not open to question. As a witness on the hearing to modify the decree the grandmother, Mrs. Macek, expressed not only a willingness but a strong desire to have the custody of her little granddaughter, giving assurance not only as to her wishes in the matter but also as to her ability to properly care for Donna. The trial judge, having observed the parties in court before him, summarized his conclusions as follows:

" 'This home is in good access to both church and school. Donna has the warmth and love not only of those residing in the home, but a host of relatives who are interested in her and attentive to her needs.

" 'Stated succinctly, Mrs. Macek gives the clear picture of a stable, well-adjusted person with warmth and affection for her granddaughter. She has maintained good relationships with Donald and his family. Therefore, a decision on present custody is not difficult.

" 'After deliberate consideration, it is the opinion of the court that presently the best interests of Donna would be served by her remaining in the legal custody of her father, Donald, in the home of the maternal grandparents. The court commends to them the excellent facilities of the Catholic Family Service.'

"In accordance with the conclusion indicated in the judge's opinion the petition for modification as filed by plaintiff and cross-defendant was denied, and the decree modified to expressly give custody of Donna to the cross-plaintiff 'in the home of Mrs. Steven Macek, the maternal grandparent, until further order of this court.' Plaintiff and cross-defendant was given the right of visitation with the child for 6 weeks each summer in the State of California, expenses of transportation to be borne by her. Removal of Donna from the jurisdiction without the approval of the court was forbidden, and the decree

further reserved the right in the court to direct psychiatric and psychological examinations of Donna as her best interests and welfare might require. From the final order of modification, which was entered on November 15, 1962, plaintiff and cross-defendant has appealed.

"The primary matter at issue in the case is the welfare of the child Donna. All other questions raised must yield priority thereto. In effect such principle is declared by CL 1948, § 722.541 (Stat Ann 1957 Rev § 25.311). Said enactment in terms undertakes to indicate the respective rights of custody of minor children in the event of separation of husband and wife, but such provisions are subject to the controlling mandate authorizing a court of competent jurisdiction to make and enforce such orders as it may deem just and proper with reference to the custody of a minor child, without reference to the statute. Counsel for appellant have stressed the legislative declaration of policy but, obviously, the controlling principle in that policy is in the declaration set forth in the final sentence, to which we have just referred.

"The problem confronting us in the case at bar must be determined in the light of existing facts bearing on the question as to what should be done by the Court for the protection of this child of a broken home. On the record before us there is 1 outstanding and undisputed fact that is of vital importance, namely the character of the home in which Donna has lived since the 25th of May, 1962. There, as the proofs indicate, she has been and will be cared for properly and will receive the affectionate attentions that are essential to childhood. The findings of the trial judge with reference to this phase of the case are sustained by the record. In that home each parent may maintain contact with the child. We have the assurance of Mrs. Macek that such will be

the case and that the mother of Donna will be welcome there if she chooses to come.

"That the trial judge gave intensive study and consideration to the case when it was before him in circuit court is clearly apparent from the record. He had the advantage, which this Court does not possess, of contact with the parties in the proceedings before him. He was in a better position than are we to judge of their motives, their sincerity, and the accuracy of their testimony. In his opinion he commented on the attitude and conduct of the plaintiff and cross-defendant at some length, saying in part:

" 'On trial Sandra claimed that Donald physically abused her; she did not so aver in her bill of complaint and on trial, Sandra's mother testified that Donna's grandparents had confronted both Sandra and Donald with the claim of physical assault and that Sandra at that time conceded that Donald had not assaulted her.

" 'An uncontested decree of divorce was taken by Sandra in this court on July 3, 1961. This decree provided among other things in respect to custody, "That the defendant herein shall have the right of reasonable visitation with said minor child and said minor child shall not be removed from the jurisdiction of the State of Michigan." Sandra conceded upon trial that she had told Donald that she had given up her relationship with "Mr. X," before Donald withdrew his cross bill of complaint for divorce; Donald testified that Sandra had assured him that she would not remove the child from Michigan and that she was looking for a place to stay in Detroit. He testified that he would not have consented to a withdrawal of his cross bill of complaint had he not received such an assurance.

" 'Sandra conceded that she knew of the prohibition against Donna's removal from Michigan, but that she already had airplane tickets purchased before taking the decree; that her lawyer at that time

did not advise her to remain in Michigan, so she flew to California, where on July 12, 1961, she was married to Dr. Percy Baugh, a Negro surgeon.

"'Thereafter, Sandra admits, she had actual notice of further proceedings brought by Donald to set aside her decree on the ground of fraud; that she knew of the entry of decree requiring her to return to Michigan within 60 days and submit herself to further investigation by the friend of the court on the question of custody of Donna, and that after consulting counsel, she decided not to return. She further explained that she was at that time pregnant with a daughter of her second marriage, Linda, who was born April 15, 1962; she stated that she did not make any request directly to the court to extend the 60-day period because she did not know this could be done.

"'The actions of Sandra in returning to work 10 days after the birth of Donna, and the succession of events thereafter in which Donna was placed from time to time in the custody of other persons, together with some interest shown in adoption out before her birth, are not the actions of an attentive and devoted mother with a single purpose of protecting the interest and welfare of her child. Upon the facts, we must find that in 2 instances at least Sandra's testimony does not have the ring of truth. She testified on trial that she suffered from beatings by Donald; yet she did not aver this in her sworn bill of complaint, nor did she support the claim when confronted by the grandparents.

"'Further, her claim that she left the jurisdiction after misrepresenting her plans to her then husband Donald, because of fear for the safety of the child, Donna, is not believable under the facts.

"'She acted in bad faith both as to the court and to her husband, Donald; she frustrated any effective exercise of jurisdiction by this court for the benefit of the child when she removed the child without approval of the court. And as to Donald, she seriously

complicated, if she did not prevent, the exercise of his right of reasonable visitation.

" 'Sandra then is a picture of a young woman who has been in serious rebellion. With 1 marriage in 1958, Donna's birth in 1959, the filing of a bill of complaint in 1960, the granting of a decree in 1961, followed in 9 days with remarriage, and with the birth of a second child in April, 1962, these do not give a picture of certainty and stability. In the light of this most recent history, can it be said that Sandra is now stable and well adjusted and that she should have the present custody of Donna, who has had more than her fair share of upsetting changes?'

"The comments of the judge are fully justified by the record. Her conduct in a number of respects was subject to censure, and of a character to raise questions bearing on her fitness to have the custody of Donna at the present time, as the opinion of the circuit judge indicates. He reached his decision with reference to the matter of custody in the light of the proof as to the character of the home where the child now is, together with a careful and dispassionate consideration of the conduct of the plaintiff and cross-defendant as disclosed by the proofs. The question before this Court is, in substance, whether the decree entered in circuit court should be here set aside or modified. The general principle that this Court has observed in the past was well expressed in *Chubb* v. *Chubb,* 297 Mich 501, 506, in the following language:

" 'While we are not restricted by the findings of the circuit court, a divorce case on appeal being heard *de novo,* especial consideration is given to such findings, so largely based upon the credibility of the witnesses, and the reviewing court ought not to reverse the determination of the trial court in such a case, unless convinced that it must have reached a different conclusion had it occupied the position of

the lower court, under like circumstances. *Brook-house* v. *Brookhouse,* 286 Mich 151; *Stratmann* v. *Stratmann,* 287 Mich 94; *Westgate* v. *Westgate,* 291 Mich 18.'"

The above statement was quoted in *Johnson* v. *Johnson,* 314 Mich 376, 382, and has been observed in numerous other decisions involving questions of the character at issue in the case at bar. It should be considered applicable here. The record before us fully supports the decision of the circuit judge.

"An attempt has been made by counsel for appellant to inject into the case questions of civil rights, under the Fourteenth Amendment to the Federal Constitution, involving racial equality. As the basis for such attempt, counsel point out in their brief that: 'Plaintiff and defendant are white. Dr. Baugh is a Negro.' It is established by the record that Dr. Baugh is appellant's present husband and the 'Mr. X' referred to in the pleadings and proofs. It is obvious from the opinion of the circuit judge that he did not consider such racial differences as of special significance at the present time. We fully concur in this view. Possible developments in the future because of the situation referred to are matters wholly of speculation and conjecture, and as such may not affect the present determination of the case. What we actually have before us is the matter of the custody of a young child as of the present time. The trial court has, of course, the reserve power under the statute to modify the decree in the respect here involved in the event of changed circumstances. In the light of the proofs, especially those relating to the home where the child now is and has been since the 25th of May, 1962, we conclude that the circuit judge was right in refusing to modify the decree entered in such manner as to require

Donna's removal from that home. The reasons underlying the decision in *Mault* v. *Elliott,* 329 Mich 544, are applicable here.

"The order denying the modification of the decree, as requested by appellant, is affirmed. No costs."

KELLY and O'HARA, JJ., concurred with DETH-MERS, J.

BLACK, J. (*concurring*). Upon manifestly careful deliberation, supported by an equally careful analysis of supporting evidence, Judge Bowles found that the best interests of Donna Potter require that she continue in present care and present environment. Such finding, confirmed here as it is, exhausts the appellate function and calls for affirmance.

There is no occasion for appraisal and judgment of the fitness or unfitness, as parent or custodian, of the appellant mother. The best interests of Donna are controlling regardless of such fitness or unfitness. Thus I perceive no reason for bolstering here, by a hypercritical "fitness" test of the mother, what Judge Bowles has decisively ascertained and we have confirmed.

The whole appellate ground has been concluded by 2 sentences appearing in the opinion of the former Chief Justice. They are:

"The primary matter at issue in the case is the welfare of the child Donna. All other questions raised must yield priority thereto."

I concur in affirmance on such settled ground, and do not join in the gratuitous test of the appellant mother's fitness for custody of Donna. The mother may be "fit" as a legal fiddle; yet she is not entitled to the child's custody when the latter's welfare dic-

tates that such custody, for the present as Judge Bowles has ruled, should remain where it is.

Souris, J., concurred with Black, J.

Smith, J. (*dissenting*). In all deference to my brothers who are sophisticated and learned men, and to the able circuit judge whose credentials are equally well established, I find it impossible to agree that this little girl should be taken from the breast of her mother.

The opinion of former Chief Justice Carr proceeds from the assumption that we are reviewing a custody order, routinely made and entered. This questionable order with its punitive appearance should not block our view of what transpired before it found its way into the record. What seems to be forgotten is that the child was apparently happy, content, and well adjusted with her mother and stepfather in California before abduction and return by the father, conceding, of course, that her mother should not have taken her there without court permission. Both parents, obviously distrustful of legal procedures in coping with such a sensitive matter, exercised self-help for which contempt could lie.

But I see neither the flaunting of authority by both parents nor the procedural niceties of former Chief Justice Carr as controlling. As to these points, I agree with Judge Bowles' appraisal as stated in his opinion:

"Further, it is clear that a contempt does not deprive a mother of custody where she is otherwise a fit person. (*Kaiser* v. *Kaiser,* 352 Mich 601, *Bowler* v. *Bowler,* 351 Mich 398, *Lotz* v. *Lotz,* 327 Mich 577, and *Lewis* v. *Lewis,* 338 Mich 197, 200.)

"As indicated upon argument, the court does not believe that the procedural issue of burden of proof is determinative. That is, whether or not the case

be viewed from the standpoint, arguendo, of: legal custody in the mother with the burden of proof to be imposed upon the father; or with legal custody properly in the father under the second decree (the mother having failed to appeal the entry of such a decree), the burden of proof to be imposed upon the mother to show a substantial change of circumstances, the disposition to be hereinafter set forth, would be the same.

"This case, as most cases, finds its resolution in the facts themselves, in the judgment of the court. On the basis of that which was duly adduced in open court, would Donna's welfare be better served by being with her mother in California or with her father in Detroit with her maternal grandmother, Mrs. Macek, assisting in such care and control?"

"Certainly the court accepts the general thesis that *the presumption of law giving a preference to a mother, particularly, with children of tender years, is based upon reason and common experience; mothers are attentive to the special needs of their off-spring, with a more intimate and direct concern for their welfare arising partly from the physiology of birth and their presence in the home;* but this is not an unalterable rule and must yield to the particular facts in a given case. Similarly, one must accept the thesis of the expert called by Sandra, Dr. Hunter H. Comly, that if there are stable interpersonal relations in the home of the mother and favorable community climate, the fact of a bi-racial marriage alone should not defeat the mother's claim." (Emphasis supplied.)

However, I would reach opposite results in this review *de novo,* giving the trial judge's findings all due weight. First I would indulge the statutory presumption that upon the separation of husband and wife having minor children the mother shall be entitled to the care and custody of all such children under the age of 12 years. CL 1948, § 722.541 (Stat Ann 1957 Rev § 25.311). A proper construction of

such statute is contained in the recent case of *Paton* v. *Paton,* 363 Mich 192, 199:

"While it is to be noted that this section of the statute is not compulsory but is subject to the discretionary power of the chancery court to safeguard the best interests of the child in a proper case, the recommendations of the legislature in that regard are not to be lightly disregarded. *Fuller* v. *Fuller,* 249 Mich 19; *Lair* v. *Lair,* 355 Mich 10.

"It is to be noted that the construction of this custody statute has been previously before this Court. The cases are collected in *Eichholtz* v. *Eichholtz,* 319 Mich 42, where this Court held that only when the mother is not of a good moral character, or where conditions exist in her home which would make it unfit for the child, may the Court well ignore the provisions of the statute and give the father custody of a child under 12."

Insofar as I have been able to determine the almost universal practice of courts in such proceedings is to enforce this policy presumption that a girl child, in particular, ought to grow up with her own mother. The reasons are obvious: love, understanding, sex training, and protection, among others. Instances in which a child of tender years, especially a female child, is taken from her mother are rare. Usually there is a substantial showing of either physical cruelty, habitual drunkenness, gross neglect, or moral depravity. Neither is suggested here.

This child should be returned to her mother. Unquestionably, there she will have full-time care. There will be no shunting from father to grandmother and back to father again. From all appearances, life with her mother and stepfather in California will be based upon a bedrock of parental love and cooperation, something hitherto denied her. Her stepfather is a surgeon in a wholesome community where experiences in democratic living are

promising. There is a substantial home sustained by adequate income. All this and a full-time mother, too.

A report to the friend of the court from California authorities, who apparently made a thorough investigation of the matter, indicates strongly that Donna's best interest lies with her mother. It is quoted, in part, as follows:

"We have looked at the house. It is a 3-bedroom, 2-bath home which has a guest bedroom off the garage. The house has a family room. It is located on a quiet street and there are sidewalks for the children. As we mentioned in our previous letter, the housekeeping standards are excellent and the house is most attractive and livable.

"We found Dr. Baugh to be of medium height, slightly stocky, and of colored race. We were impressed with his very fine mind, and it is our feeling he is a man who does not make decisions lightly. He feels a very keen responsibility to Donna and assured me he would do everything he could to be a good father to her. He said that he would love her, care for her, see that her physical and spiritual needs were met, and that he would help discipline her when necessary. We understand he has signed an affidavit for the court concerning this. Dr. Baugh is in the process of becoming a Catholic. They both attend the Catholic Church. If Donna returns, she will be educated in Catholic schools. * * *

"We talked with Mrs. Lulu Mae Clemens, director of health education of the Riverside county schools, who is a next door neighbor of the Baughs. She said the entire neighborhood was most upset when Donna was taken and all felt compassion for Mrs. Baugh. She believes Dr. and Mrs. Baugh to be very good parents and spoke highly of both of them. Mrs. Clemens said that Dr. Baugh and Mrs. Baugh seem to same [have] an excellent relationship and have adjusted to their situation. She mentioned that Donna is an exceptionally bright child and has an

extensive vocabulary and that she feels this reflects the care and training of Mrs. Baugh."

The care and training of Donna should be committed to her mother. The fears which form the muted thread of this whole proceeding are patently groundless insofar as the present is concerned. If problems should develop in the future, corrective measures can be taken at that time.

I vote to reverse.

KAVANAGH, C. J., concurred with SMITH, J.

ADAMS, J., took no part in the decision of this case.