GARZA *v.* GARZA

1. DIVORCE—COHABITATION—CONDONATION.
   Voluntary and continued cohabitation by the parties to a divorce action after commencement of the divorce action ordinarily constitutes condonation.

2. DIVORCE—FRAUD ON COURT.
   Plaintiff husband committed fraud upon the court by concealing that he had resumed marital relations with his wife during

REFERENCES FOR POINTS IN HEADNOTES
[1] 24 Am Jur 2d, Divorce and Separation § 214 *et seq.*
[2-4, 6, 7] 24 Am Jur 2d, Divorce and Separation §§ 219, 404.
[5, 8] 24 Am Jur 2d, Divorce and Separation § 442 *et seq.*
[9] 4 Am Jur 2d, Appeal and Error § 76.
[10] 24 Am Jur 2d, Divorce and Separation § 884 *et seq.*

the pendency of a divorce action and by his failure to reveal facts concerning property, including contributions of the wife to the marriage.

3. DIVORCE—COHABITATION—FRAUD ON PARTY.

Voluntary and continued cohabitation by the plaintiff husband with his wife after the husband had commenced a divorce action justified his wife in believing that her husband was not proceeding with the divorce action.

4. DIVORCE—DIVISION OF PROPERTY—VALUE OF PROPERTY—FRAUD ON COURT.

Awarding the plaintiff husband in a divorce action all of the real estate, including properties held by the entireties, the household furniture and furnishings, a truck, and his personal property, while awarding the defendant wife only an automobile and her own personal property, was not an equitable division of the marital property where there had been no evidence introduced as to the value of property.

DISSENTING OPINION

BRONSON, J.

5. DIVORCE—SETTING ASIDE JUDGMENT—FRAUD.

*The power to set aside a judgment of divorce because of fraud upon the court is unquestionable.*

6. DIVORCE—FRAUD—CONDONATION.

*Cohabitation which continues after a complaint for divorce has been filed may operate as a fraud upon the court.*

7. FRAUD—FRAUD ON COURT—PROOF—BURDEN OF PROOF.

*Fraud on the court is never presumed and must be proven by a preponderance of the testimony.*

8. DIVORCE — SETTING ASIDE JUDGMENT — FRAUD — SUFFICIENCY OF EVIDENCE.

*Evidence consisting of the defendant's allegations that she and her husband had continued to cohabit as husband and wife after plaintiff husband's complaint for divorce, the plaintiff's denial of this allegation, and other inconsistent testimony of the defendant was not sufficient to establish that the divorce judgment had been obtained by fraud.*

9. APPEAL AND ERROR—FINDINGS OF FACT—STANDARD OF REVIEW.

*Appellate court should not substitute its judgment for that of the trial court unless the finding is clearly erroneous.*

10. Divorce—Property Settlement.

   *The disposition of property of the parties in a divorce action is not governed by rigid rules.*

Appeal from Saginaw, Hazen R. Armstrong, J. Submitted Division 3 April 7, 1970, at Grand Rapids. (Docket No. 7,938.) Decided October 29, 1970.

Complaint by Jose R. Garza against Isabel Garza for divorce. Judgment granted. Defendant's motion to set aside the decree denied. Defendant appeals. Reversed and remanded.

*Hamed W. Suffety, P. C.,* for plaintiff.

*Murphy & Hedberg (John A. McColgan,* of counsel), for defendant.

Before: Holbrook, P. J., Bronson and E. W. Brown,* JJ.

Holbrook, P. J. This is a divorce matter between parties who were married in May of 1947. Three children were born of the marriage; one daughter was born on July 30, 1948, another daughter on September 13, 1949, and a son born on October 6, 1950. Plaintiff, Jose R. Garza, commenced this divorce action on March 31, 1969. Return of service indicates that the summons was served upon defendant, Isabel Garza, on April 3, 1969. Default for failure to plead was entered June 11 and on June 14, the plaintiff made an affidavit to the effect that defendant was not in the armed services. The affidavit was filed June 16, 1969.

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

On that day a hearing was held and a judgment of divorce granted to plaintiff based on testimony of plaintiff and his sister-in-law to the effect that defendant had been associating and corresponding with a younger man and that defendant had informed the plaintiff that she would no longer remain his wife when this man returned from Vietnam. Plaintiff also testified in part as follows:

"*Q.* You feel it is impossible, with her following this course of conduct, for you and she to continue living as husband and wife?
"*A.* Yes, I do."

The sister-in-law also testified that she did not believe there was any chance for reconciliation.

Plaintiff's complaint fails to mention the property owned by the parties and the plaintiff's testimony at the divorce hearing discloses the following:

"*Q.* During the marriage did you accumulate some real property and household furniture?
"*A.* Yes.
"*Q.* You have the place where you live, plus a balance due you on a land contract from Bay City?
"*A.* Yes, sir.
"*Q.* In event the court sees fit to grant you a divorce, you want the real estate items and also the personal property belonging to you?
"*A.* Yes.
"*Q.* Your wife has not appeared in this case, but she is familiar, is she not, with these matters we have been discussing?
"*A.* Yes."

The divorce judgment awarded to plaintiff the following real estate:

"The Northeast 1/4 of the Southeast 1/4 of Section 16, Town 16 North, Range 4 East, containing 40 acres, more or less; together with, and subject

to, however, all recorded conditions, covenants, easements, reservations, and restrictions, if any, which said property is owned by the parties hereto as tenants by the entireties.

\* \* \*

"Lot 11 in Block 45 of Emerson's Addition to the City of East Saginaw, Michigan, now a part of the City of Saginaw, according to the recorded map or plat thereof."

The plaintiff was also awarded all the household furniture and furnishings of the parties, the 1967 Chevrolet sports van truck, and his personal belongings.

The defendant was awarded $1 in lieu of dower, and her personal belongings, including a Rambler automobile.

We fail to find in the record any evidence of the value of the real estate awarded plaintiff, including that parcel of land held by the parties as tenants by the entireties, nor was there any value placed upon the household furniture and furnishings or the Chevrolet awarded plaintiff and the Rambler awarded defendant.

Sometime after June 16, 1969, plaintiff's attorney wrote a letter to defendant informing her of the judgment of divorce. Prior to July 7, 1969, defendant retained an attorney who filed an appearance on July 7, 1969, and a motion to vacate the judgment based upon the following claims:

"3. That the defendant was led to believe that the plaintiff would not proceed to final judgment by the acts of the plaintiff, and therefore the defendant, being unaware of her rights in this matter, failed to answer said complaint.

"4. Defendant did not retain an attorney.

"5. Defendant was without counsel and was therefore unaware of the serious consequences resulting from failure to answer said complaint.

"6. That the acts of the plaintiff during the pendency of this action constitute a fraud on the court in that, up until the divorce judgment was granted, the plaintiff and defendant cohabited as man and wife in all respects.

"7. That the plaintiff suppressed matters which he knew had a material bearing upon the settlement of property rights.

"8. That the matters suppressed are that for the entire period of this marriage the defendant gave to the plaintiff each and every paycheck she earned, and that the plaintiff used this money equally with his own money to purchase all property acquired by the plaintiff and defendant during the term of their marriage."

Plaintiff filed an answer to these allegations as follows:

"II

"Plaintiff denies paragraph 3 of defendant's motion, and affirmatively avers that at no time was defendant told that plaintiff would not proceed to judgment when the time for taking same had elapsed.

"III

"Plaintiff admits paragraph 4 of defendant's motion, and affirmatively avers that this was her prerogative.

"IV

"Plaintiff denies paragraph 5 of defendant's motion, and affirmatively avers that this was not the first divorce action filed between the parties.

## "V

"Plaintiff denies paragraph 6 of defendant's motion.

## "VI

"Plaintiff denies paragraph 7 of defendant's motion.

## "VII

"Plaintiff denies paragraph 8 of defendant's motion, and affirmatively avers that defendant retained all of her earnings for the last five years that she has been employed."

Defendant made a reply to the affirmative matters contained in plaintiff's answer denying them.

At the hearing held on the motion to vacate the judgment held on July 28, 1969, the court heard arguments of the attorneys and the testimony of defendant, who was the only witness. Portions of her testimony best explain her position that fraud was practiced on the court by plaintiff, *viz.*:

"*Q.* When you moved to Michigan, Mrs. Garza, were you employed by anyone?[1]
"*A.* Yes, I was employed at St. Luke's Hospital.
"*Q.* Where is that?
"*A.* Here in Saginaw.
"*Q.* When did you start working at St. Luke's Hospital?
"*A.* May 15th, 1952.
"*Q.* Have you worked there ever since?
"*A.* Yes, sir.
"*Q.* Are you working there now?
"*A.* Yes, sir.
"*Q.* Can you tell the court approximately how much money you are paid for your work there?
"*A.* I started at $1.25 an hour and from there I got a raise.

---

[1] Moved to Michigan in 1950.

"*Q*. That's an hour?

"*A*. Yes.

"*Q*. And how much do you earn an hour now?

"*A*. $1.88 an hour.

"*Q*. How are you paid by St. Luke's Hospital?

"*A*. Every two weeks.

"*Q*. By check?

"*A*. Yes, sir.

"*Q*. What did you do with that check?

"*A*. I brought it home. I always gave it to my husband. My husband always asked for it.

"*Q*. Have you given it to your husband during the entire course of your marriage?

"*A*. For the last two years, I haven't.

\*          \*          \*

"*Q*. Mrs. Garza, since you got the complaint back in about March 1969, and the summons, but you did not immediately seek the advice of an attorney, can you tell the court why you didn't get an attorney at that time?

"*A*. It was because I thought he was going to just stop the same way he did the first time.

"*Q*. Why do you say that?

"*A*. Because we were still living together as man and wife. We never have separated and we were sleeping together.

"*Q*. Were you having relations all during this time?

"*A*. Yes, when it was his bedroom, it was my bedroom, either up or downstairs.

"*Q*. At any time since you received the complaint and summons has there been a period of time when you haven't had relations?

"*A*. No. No, we have never quit having relations.

"*Q*. Does your husband live at the same address you do?

"*A*. Yes, sir.

\*          \*          \*

"*Q*. And are you still living at the house?

"*A*. Yes, sir.

"*Q.* And is your husband still living at the house?
"*A.* Yes, sir.
"*Q.* That's all."

On cross-examination defendant testified in part as follows:

"*Q.* You also said in your motion you have been giving Mr. Garza your paychecks ever since you went to work. Apparently, though, you have changed your mind now upon your lawyer questioning you about it.

"*A.* No, I have people that know I gave him my paycheck.

"*Q.* But you don't do it now and you haven't done it for some time?

"*A.* No, not the last two years.

"*Q.* You started working when?

"*A.* It was either May 13th or 15th, 1952.

"*Q.* And you worked steadily until 1961?

"*A.* Steadily and then I worked part time because I was sick.

"*Q.* But from 1952 to 1961, Mrs. Garza, you worked regularly?

"*A.* Yes, sir.

"*Q.* And you have worked part time since?

"*A.* Yes, but mostly more than eight to ten days.

"*Q.* How many bedrooms do you have?

"*A.* Four upstairs and one down.

"*Q.* Where does Mr. Garza sleep?

"*A.* Downstairs.

"*Q.* Are any of the children there?

"*A.* Just one.

"*Q.* She could have come here today to give testimony that you and your husband sleep together?

"*A.* She is working. She works during the day, she has a job, but she knows about it.

"*Q.* When does he work?

"*A.* At night, 10 o'clock to 6 o'clock in the morning.

"*Q.* You say you *do*, and your husband denies sleeping with you, you understand that?

"*A.* Yes.

"*Q.* Do you still say he does?

"*A.* Yes. He denies it, I know, but he was just with me last Saturday.

"*Q.* In which bedroom?

"*A.* Downstairs.

"*Q.* And where was your daughter?

"*A.* She wasn't home."

At the time of the divorce proceedings, the parties had been married for more than 21 years, had raised three children, and had both been gainfully employed. Defendant had worked at St. Luke's Hospital for about 15 years and had contributed her earnings to the marriage. These facts are not in dispute. Plaintiff's testimony at the divorce hearing concerning the property of the parties was scanty, to say the least, and gave no evaluations whatever of the property or any indebtedness against it, if any. He did not even state to the court that one of the parcels of property owned was held by him and his wife as tenants by the entireties. The plaintiff, at the divorce hearing, was not asked, nor did he volunteer any information as to when the parties ceased to cohabit as husband and wife; therefore, there is no sworn testimony in the record contesting defendant's testimony that they continued to live together as husband and wife even up to the time of the hearing of the motion to vacate the judgment on July 28, 1969. In *Curtis v. Curtis* (1930), 250 Mich 105, 109, it is stated:

"The question of whether there was cohabitation between the parties after the filing of the bill cannot be decided upon the petition and answer, but commands the taking of proofs.

"If, after filing the bill for divorce, plaintiff resumed marital relations with defendant and as-

sured her that the suit was abandoned when he had no such intention, he perpetrated a fraud upon defendant, and, by proceeding to decree thereafter and concealing from the court the fact of such resumption of marital rights, such fraud, being extrinsic, will authorize the court to vacate the decree. See *McGuinness* v. *Superior Court* (1925), 196 Cal 222 (237 P 42, 40 ALR 1110)."

Also, see *Allen* v. *Allen* (1954), 341 Mich 543; *Linn* v. *Linn* (1955), 341 Mich 668; and *DeHaan* v. *DeHaan* (1957), 348 Mich 199. This Court is confident that had the trial court known that plaintiff and defendant had continued to cohabit together as husband and wife from the time of the commencement of the suit to the hearing on the merits that the court would not have granted a judgment of divorce.

The defendant originally may have been at fault as to the cause for the divorce, and, if so, plaintiff was justified in proceeding for a divorce, but not when plaintiff and defendant voluntarily were continuing to cohabit as husband and wife. The trial judge did not determine that defendant was untruthful or that he did not believe defendant—but in denying her any relief stated only: "There are certain *rules* and *laws* the court must follow." (Emphasis supplied.) Voluntary cohabitation of the parties after commencement of a divorce action ordinarily constitutes condonation.

We conclude, under the facts in this case, that voluntary and continued cohabitation by plaintiff with defendant after the commencement of the divorce would justify the wife in believing that her husband was not proceeding with the divorce action.

In *Lantinga* v. *Lantinga* (1947), 318 Mich 78, 80, 81, it is stated:

"To hold otherwise than indicated in the above-cited cases would be to defeat rather than to administer justice. In the instant case, the record is replete with a showing of fraud on the part of plaintiff in the conduct of the divorce proceedings, and that showing under oath by defendant is not met by any counter-showing by plaintiff under oath. Plaintiff perpetrated a fraud on the trial court by deliberately leading the court to believe that since the alleged date of separation plaintiff and defendant had not cohabited as husband and wife, whereas such cohabitation continued during a large portion of time intervening between commencement of suit and the hearing in court. Plaintiff also suppressed matters which he knew had a material bearing upon the settlement of property rights and thereby deceived and misled the court, and in consequence thereof the trial court should have a right to reconsider such issues to the end of reaching an equitable result.

We determine that the instant case is very similar to the facts in *Lantinga* v. *Lantinga, supra,* and that plaintiff did practice fraud on the court in concealing the fact that he and defendant had resumed marital relations and the facts concerning the property, including contributions of the wife to the marriage.

We also determine that the awarding of all the real estate, including that held in both their names as tenants by the entireties, the household furniture and furnishings of the home, the Chevrolet, and plaintiff's personal belongings to the plaintiff, whereas defendant was only awarded the Rambler automobile and her own personal belongings without any evidence as to the value of the property, was not an equitable division. We conclude that we would have had to reach another result had we occupied the position of the trial court. *Wells* v.

*Wells* (1951), 330 Mich 448; *Ethridge* v. *Ethridge* (1948), 322 Mich 578; and *Socha* v. *Socha* (1966), 5 Mich App 404.

Reversed and remanded for further proceedings not inconsistent with this opinion. Costs to defendant.

E. W. Brown, J., concurred.

Bronson, J. (*dissenting*). Plaintiff filed an action for divorce alleging extreme and repeated acts of cruelty by the defendant as the basis for the action. Defendant, although properly served, failed to appear and the plaintiff was granted a default judgment on June 16, 1969. At that time the trial judge heard testimony of both the plaintiff and the plaintiff's sister-in-law. The plaintiff testified that defendant had been associating and corresponding with a younger man and that defendant had informed the plaintiff that she would no longer remain his wife when this man returned from Vietnam. The plaintiff further testified that under the circumstances the parties could not continue to live as husband and wife. The testimony of plaintiff's sister-in-law substantially corroborated the plaintiff's testimony and further indicated that she felt there would be no chance of reconciliation between the two parties.

On July 7, 1969, defendant filed a motion to vacate the judgment and to present a counter-claim. The defendant's motion alleged, among other things, that the plaintiff had committed a fraud upon the court in that plaintiff and defendant had continued to cohabit as man and wife up until the time the divorce judgment was in fact granted. Plaintiff, in his answer to the motion to vacate the judgment, denied this allegation. A hearing on this motion to vacate

was held on July 28, 1969, at which time only the defendant testified. On cross-examination, defendant admitted writing to another man. The defendant's testimony on cross-examination was at times inconsistent, especially with regard to whether the defendant had in fact contacted her attorney prior to the entry of the default judgment. In addition, defendants' testimony on cross-examination was in direct conflict with an allegation in her motion to vacate the judgment which had stated that plaintiff intentionally suppressed matters which he knew had a material bearing upon the settlement of property rights. Defendant had alleged in her motion that the plaintiff suppressed the fact that for the entire period of this marriage the defendant had given to the plaintiff each and every paycheck which she earned. On cross-examination the defendant admitted that she had not given the plaintiff her paycheck for a two-year period immediately preceding the instant suit. Defendant continued to maintain, however, that both parties had continued to live together as man and wife in the same residence. From a denial of the motion to vacate the judgment, defendant appeals.

The basic question in this case is whether the divorce judgment and related orders should be vacated for fraud upon the court. The complaint stated that cohabitation ended about March 25, 1969. At the July 28, 1969 hearing the defendant testified that she and plaintiff lived together and continued to cohabit after March 25, 1969, and in fact had been living as husband and wife just before the July hearing. The plaintiff, in his answer to the motion to vacate the judgment, denied this allegation. Neither version is corroborated by extrinsic evidence.

The power to set aside a judgment of divorce for fraud upon the court is unquestionable. *DeHaan* v.

*DeHaan* (1957), 348 Mich 199; *Linn* v. *Linn* (1955), 341 Mich 668; *Allen* v. *Allen* (1954), 341 Mich 543; *Lantinga* v. *Lantinga* (1947), 318 Mich 78.

Cohabitation which continues after a complaint for divorce has been filed may operate as a fraud upon the court. In *Curtis* v. *Curtis* (1930), 250 Mich 105, 109, the Court stated:

"The question of whether there was cohabitation between the parties after the filing of the bill cannot be decided upon the petition and answer, but commands the taking of proofs.

"If, after filing the bill for divorce, plaintiff resumed marital relations with defendant and *assured her that the suit was abandoned when he had no such intention,* he perpetrated a fraud upon defendant, and, by proceeding to decree thereafter and concealing from the court the fact of such resumption of marital rights, such fraud, being extrinsic, will authorize the court to vacate the decree. See *McGuinness* v. *Superior Court* (1925), 196 Cal 222 (237 P 42, 40 ALR 1110)." (Emphasis added.)

The instant case is distinguished from the *Curtis* decision on two grounds. First, the defendant does not state, as was the case in *Curtis,* that the plaintiff had assured her that his suit for divorce had been abandoned. *Gombasy* v. *Gombasy* (1947), 318 Mich 139, 145. Second, and perhaps more important, proofs were in fact taken in the instant case. The defendant was allowed to testify and was also subjected to cross-examination by the plaintiff's counsel.

It is well recognized that fraud is never presumed and must be proven by a preponderance of the testimony. *Farley* v. *Farley* (1936), 278 Mich 361; *Steele* v. *Shaffer* (1928), 241 Mich 632. In *Jewell* v. *Jewell* (1959), 358 Mich 1, 3, the Court stated:

"It has been generally held that a decision to set aside a divorce decree on the ground of fraud is discretionary with the trial court, and in the absence of a clear showing of fraud it will not be set aside."

See *Kinek* v. *Kinek* (1951), 331 Mich 54.

I conclude, after a careful examination of the record, that while there are implications of fraud in the record, the evidence was not sufficient to establish fraud. The mere allegation by the defendant that the parties had continued to cohabit subsequent to the plaintiff's complaint for divorce does not necessitate the conclusion that this in fact did occur. As mentioned previously, the defendant's testimony was somewhat inconsistent and the trial judge evidently chose not to believe the defendant on this issue. This factor, coupled with the plaintiff's denial of the allegation in his answer to the motion to vacate, together with the testimony in the original hearing, is sufficient to sustain the trial court's determination. This Court should not substitute its judgment for that of the trial judge unless the finding is clearly erroneous. The trial judge is in a better position to test the credibility of the witnesses by observing and hearing them in open court. *Johnson* v. *Johnson* (1961), 363 Mich 354.

The disposition of the litigants' property in a suit for divorce is not governed by rigid rules. I cannot conclude that I would have reached a different determination under the circumstances or that the record discloses a manifest abuse of discretion by the trial judge. *Billingsley* v. *Billingsley* (1946), 315 Mich 417; *Cavanagh* v. *Cavanagh* (1969), 17 Mich App 585.

The instant record, reviewed in its entirety, supports the factual findings, discretionary decisions, and the judgment rendered. There is insufficient proof of material fraud or collusion to absolve de-

fendant from the responsibility of filing an answer within the allotted 20 days. The "good cause shown the court" in GCR 1963, 520.4 has not been demonstrated. The property settlement developed at the proceedings below is, under the circumstances, sufficiently reasonable as not to require appellate interference.

I would affirm the trial court.